By the Court. Bosworth, J.
The complaint states a cause of action for goods sold and delivered by the plaintiffs to the *200 defendant between the 1st of November, 1850, and the 1st of February, 1851. The goods were in fact furnished on the application of one Richard- McNulty. The judge before whom the cause was tried instructed the jury that the question to be determined was, to whom was this lumber sold and delivered ? If the lumber was sold to McNulty, and on his credit, the defendant is not liable; if it was sold to the defendant, and on his credit, and at his request, then he is liable. If it appears that the lumber was sold to McNulty on his credit and upon the promise of the defendant to see the plaintiffs paid, the defendant is not liable. The jury found a verdict in favor of the plaintiffs for $204, the amount claimed by the plaintiffs.
Assuming the jury to have acted in obedience to the charge of the court, they must have -found that the lumber was not sold to McNulty, wholly or in part on his credit, but was sold to the defendant on his credit and at his request. The’ defendant moves for a new trial on the ground that the verdict is against law and evidence.
The testimony shows that; McNulty, on the 1st of November, 1850, agreed to purchase of the defendant five lots at a specific price, and to erect ón them five dwelling-houses of a particular character within a designated period. The defendant agreed to advance to McNulty,.to aid in the erection of the buildings, $5,000, as the work progressed, and, if requested, the further sum of from $2,000 to $3,000, as he might deem “ advisable and safe,” to enable McNulty to' so far finish the houses as to have the same all plastered, trimmed, and stairs up, &c.
McNulty agreed to pay by the 1st of April, 1851, the contract price of the lots, and all advances with interest, when a deed was to be given, and in case McNulty could not pay the whole in cash, he was to have the privilege of giving a mortgage on the premises for not exceeding $5,000 of 'the whole amount. The contract contained this clause“ And any' bills for materials for said houses, or for other purposes, paid by said party of the first part (Bradshaw), or incurred, shall be deemed as part of the above advances.”
This action was brought to recover a balance due for lumber furnished by the plaintiffs, to be used in the construction of these houses.
*201 The only evidence given by the plaintiffs, bearing on the questions of fact submitted to the iury, consists of the testimony of HcHulty.
It will be borne in mind that he was not present at any interview between either of the plaintiffs and the defendant. He testifies to what he told the plaintiffs when he applied for lumber and to a subsequent confession of the defendant, but he does not pretend to have repeated to the defendant the statement which he testifies he made to the plaintiffs, nor does he pretend to have had any authority to make the statement, except such as may be furnished by the written contract between himself and the defendant.
He testifies that at the time he ordered the lumber he went to see if it would suit, and he told the plaintiffs that “ the defendant would see them paid for all the lumber they would send to those buildings.” That Corning went to see the defendant before any .lumber was delivered, and the day after Corning so went, he called on the defendant at his office, and told him he had seen the lumber, and “ he said yes, that Hr. Corning, had called on him the day before, and he told him that he would see him paid for all the lumber delivered at those buildings.”
This is all the evidence of the acts or confessions of the defendant, prior to the date of the last item of the bill, tending to show that the lumber was sold to the defendant on his credit and at his request. There was no evidence that the lumber was in fact charged to the defendant in the plaintiffs’ books, or that a bill of the whole, or of any part of it, was rendered to him as the purchaser.
Hr. Wallis testified that he was present at the interview between Corning and Bradshaw, and heard the conversation between them. Corning stated that HcHulty had applied to him for lumber for the houses, and he wanted to know the arrangement between them. That Bradshaw explained to Corning the terms of the contract with HcHulty. Corning then wished to know if the defendant would become responsible for the timber and lumber to be furnished to the houses. “ The defendant said he would not become responsible for anything furnished to the houses, but he would pay the orders of HcHulty out of his payments as they became due.”
*202 Assuming the witnesses to be equally entitled to credit, there is this marked distinction between the nature of the testimony which they gave: Wallis swears to what the conversation actually was between Coming and the defendant, and if he states it accurately, the defendant absolutely refused to incur any liability other than to accept McNulty’s orders, payable as moneys should become due to him under the contract; McNulty, on the other hand, swears to a confession of the defendant that he had told Coming he would “ see him paid for all the lumber delivered at those buildings.”
To charge the defendant on this evidence, it would be necessary to hold that the jury were justified in finding that Wallis was mistaken as to what the conversation between Corning and Bradshaw really was, that McNulty stated accurately the confession of Bradshaw, that the confession was a correct version of the conversation; and to also hold that the terms of it, unexplained, prima, facie import a purchase, or absolute agreement by defendant to pay the plaintiffs for the lumber.
The defendant introduced in evidence a bill containing the first seven items of the plaintiff’s account, amounting to $142 r%\, the caption of which is in these words :
“ Mr. R. McNulty,
“ Bought of Brown & Corning,
“ Wholesale and Retail
“ Dealers in Lumber.
“Terms Cash.”
On the back of it was a receipt in these words, viz.:
“Received, New York, December 7, 1850, one hundred dollars on account of within bill.
“ Brows & Corntng.”
Hence it is incontestable that on opening the account the lumber was charged to McNulty, and there is no evidence that the whole of it was not charged to him. The defendant also gave in evidence a receipt, signed by the plaintiff, in these words, viz.:
*203 “ Received, New York, January 7,1851, of George Bradshaw, for Richard McNulty, one hundred and fifty dollars, on account of'lumber furnished to Thirty-first street houses.
“ Brown & Cornuto.”
All of the account was of a date prior tó this receipt, except two items of the date of January 16,1851, amounting to $15.16. The receipt of course related substantially to the entire account, and its terms are express that the payment it evidences was - made for Richard McNulty, on account of lumber furnished to these houses.
The bill of $142T%T shows that on opening the account credit was given to McNulty, and the receipt of January 7th imports that he was a debtor of the plaintiffs for the lumber on which the $150 was paid. The statement or confession of Bradshaw, sworn to by McNulty, even assuming it to have been as sworn to by him, is entirely consistent with the existence of such a relation between the parties. Instead of raising a presumption, or justifying the inference that Bradshaw was regarded by the parties, or even by the plaintiffs, as the debtor to whom alone the credit was given, it properly only tends to show that Bradshaw undertook that McNulty should pay for such lumber as the plaintiffs might furnish him to be used in the construction of " these houses.
There is certainly nothing in it tending to disprove the fact prima facie established by the terms of the bill of December 7th, and of the receipt of January 7th, that credit was given to McNulty for the lumber, and that he was treated by the plaintiffs as the principal debtor from the beginning to the end of the account. No explanation has been given of the fact that the lumber was charged to him by the plaintiffs, or that the only account which appears to have been Tendered was made out against him as the party liable. The only other evidence which tends tó prove any promise of Bradshaw, original or collateral, to pay for the lumber, is found in the testimony of McNulty, of what was promised and said at the time he . assigned the contract between himself and the defendant to Terwilliger & Graham. McNulty being unable to perform the contract, sold and assigned his interest in it to Terwilliger & *204 Graham, on the 21st of January, 1850, for $150, and they undertook to execute it. Bradshaw gave his assent to the assignment. Cotemporaneously with these transactions, Mc-Hulty and Bradshaw, by a written instrument, relinquished and cancelled the contract as between themselves. McHulty testified that “ when the contract was cancelled, the defendant said he would pay all the bills against the buildings. He said every dollar should be paid if I Would give up the contract. He said he would pay the men that day, and asked if there were any other bills on the buildings, except those for which he was accountable, mentioning that of Brown & Corning, and he. said those would 'be paid to-morrow. He was to advance me $150 to pay the men. He asked me about all the bills he was liable on, mentioning the bill of the plaintiffs.”
Terwilliger and Mr. Wallis were present when the contract was assigned to Graham & Terwilliger, and the agreement between McHulty and the defendant was cancelled. Mr. Wallis testifies that nothing was said about the defendant’s paying any bill. Terwilliger swears that nothing was said, that he heard, about the defendant paying $150 to any one, or any money to any one. If it had been said he must have heard it. He also testified that after the assignment of the contract to himself and Graham, Corning asked him if he was going to pay McHulty’s bill. He said, Ho. Corning said McHulty had told him that by his arrangement with Terwilliger, the latter was to pay all the debts McHulty had contracted respecting the buildings.
Mr. Wallis further testified that he had seen Corning at defendant’s office after money; that Corning said he came to get money on account of McHulty, and at those interviews he heard the defendant refuse' to pay the plaintiffs, because no money was due to McHulty on the contract.
The only part of the evidence of what was said at the time the contract was cancelled, which deserves to be particularly considered, is the- remark said to have been made by Bradshaw, viz.: “ He said he would pay the men that day, and asked if there were any other bills on the buildings, except those for which he was accountable, mentioning that of Brown *205 & Coming.....He asked me about all the bills he was liable on, mentioning the bill of the plaintiffs.”
Assuming these remarks to have been made precisely as they are sworn to by McNulty, they are in no way incompatible with the theory that the lumber was sold and delivered to McNulty on his credit, and on the promise of Bradshaw to pay any orders that McNulty might draw, as payments should become due to him. Whether considered by themselves or in connection with the other evidence relied upon to sustain the plaintiffs’ case, they do not justify the conclusion in opposition to the legal effect of the terms of the receipt of January 7th, - and of the fact that the lumber was charged to McNulty; that the lumber was sold to the defendant on his credit and at his request.
To claim that as a part of the terms and consideration on which McNulty relinquished his contract, the defendant promised to pay the plaintiffs and is therefore liable, would be an abandonment of the whole ground of action stated in the complaint. That rests on the idea of a sale of the goods to the defendant, as a purchaser of the same, at the time they wei’e ordered.
Reluctant as we are to interfere with the verdict of a jumy, in an action which has been tried and submitted, under appropriate instructions as to the principles of law applicable to the case, yet we cannot resist the conclusion that the lumber was furnished to McNulty on his application and on his credit.
That evidence, satisfactory in its character, establishes the fact that the lumber was charged to McNulty and not to the defendant; that the moneys paid by the latter to the plaintiffs, were paid by the defendant and accepted by the plaintiffs, as a payment on account of a debt owing to them by McNulty. That all the evidence is consistent with such a theory of the case, and with the testimony of Wallis, as to the conversation that took place between Coming and the defendant before any lumber was delivered. And that there is no evidence which authorizes a court or jury to find that no credit was given to McNulty, but that it was given exclusively to Bradshaw and with his assent.
We are, therefore, of the opinion that the verdict must be *206 set aside and a new trial ordered. As it does not appear that the jiidge was requested either to nonsuit the plaintiff, or to order a verdict in favor of the defendant, the verdict is set aside purely on the ground that it is against evidence. In such a case a new trial is only granted on payment of costs. (9 Wend. 60, 17 ed. 501; 4 Hill, 104.)
A rule will be entered granting a new trial on payment by defendant of the costs of the former trial, and of the subsequent proceedings.