Nov. Term, 1858.

BILLINGSLEY v. DEMPEWOLF.

---

## BILLINGSLEY v. DEMPEWOLF.

*A.* lent his horse to *B.*, under a parol promise by *C* that he would make good any agreement *B.* might make with *A.* with regard to the horse. *B.* failed to return the horse, and *A.* sued *C.* for his value. *Held*, that *C.'s* liability was only collateral.

*Held*, also, that it was for the Court, sitting in this case as a jury, to determine to whom *A.* gave credit; and that this Court will not disturb such a finding, unless it is flagrantly wrong.

Monday, December 20.

APPEAL from the *Dearborn* Court of Common Pleas.

HANNA, J.—*Billingsley* alleged in his complaint that he lent to *Joseph Allen* and another a horse of the value, &c., to be returned in two weeks, &c.; that before the said loan, defendant, by a parol promise, agreed to be security for said horse; that if said *Allen*, &c., did not return the horse at the time, &c., he would pay for the same; that upon said agreement, &c., of defendant, plaintiff loaned said horse to, &c., and that they have not returned said horse, by which, &c.

There was no demurrer to the complaint. Answer, setting up the general and special denials.

Trial by the Court, and finding for the defendant. Motion for a new trial, on the ground that the finding is con-

trary to the law and the evidence. Motion overruled, and judgment for the defendant.

The evidence is in the record, and is brief.

*McCall* testified that about the first of *August*, 1852, he saw the plaintiff, *Allen*, and another man, two miles from *Lawrenceburgh*, coming in. The plaintiff and *Allen* were in a buggy. The other man was leading the horse in controversy. They all stopped at defendant's. While there, *Allen* said to the defendant, in the presence and hearing of the plaintiff, that he was about to get the plaintiff's horse to run a race in *Cincinnati*, and that the plaintiff wanted security for the return of the horse. The defendant remarked (plaintiff standing by), "Any agreement you and *Billingsley* make about the horse, I will make good." The horse was, thereupon, delivered up to the *Cincinnati* men. The witness understood from all the parties that they had come in, three miles, from the plaintiff's to the defendant's, on purpose to get security for the horse, the plaintiff having refused to let the horse go until the defendant made the remark referred to. The horse was to be returned in about three weeks. *Allen* and the other man took him away with them. He was worth 150 dollars.

*Groves*, a witness, heard *Major*, as attorney for the plaintiff, demand pay for the horse of the defendant. The defendant said *Allen* and another man got the horse and took him away, and were to return him in two or three weeks; that he knew *Allen*, and if he had to pay for the horse, it would be a dear horse to him. The witness saw the horse in *Allen's* possession on the day before the last presidential election (1852), at *Cincinnati*. The plaintiff then requested him to return him, which he promised to do the next day. He was worth 150 dollars.

Was the finding for the defendant, upon this evidence, correct?

By the plaintiff, it is contended that the foregoing facts made the defendant primarily liable for the return of the horse, or to pay his value. The defendant insists that he is not so liable.

This is a case in which there is no conflicting testimony.

The question is, what are the rights and liabilities of the parties upon an undisputed state of facts; and do these facts make the defendant originally, or only collaterally, liable?

In *Leonard* v. *Vredenburgh*, 8 Johns. 39, it is said that, "if the whole credit is not given to the person who comes in to answer for another, his undertaking is collateral." It is said in *Matson* v. *Wharham*, 2 T. R. 80, that if one only promise in aid of the person who obtains the property, so that there is a remedy against both, according to their distinct engagements, then the undertaking is collateral. In the preceding case, that of *Jones* v. *Cooper* is referred to, in which a person absenting himself from home requested a baker to furnish his mother-in-law with bread during his absence, and he would see him paid. This was held to be a collateral undertaking. In *Brush* v. *Carpenter*, 6 Ind. R. 78, it was held that the verbal promise of *A.* to *B.* to indemnify and hold him harmless as replevin-bail for *C.*, was void. In *Matthews* v. *Milton*, 4 Yerg. 576, *A.* and *B.*, being in the store of —— together, *A.* told the plaintiff he would pay for any article *B.* might take up. The articles purchased were charged to *A.* and *B.* *Held*, that the promise of *A.* was collateral. In *Nelson* v. *Hardy*, it is said that the inquiry as to whom the credit was given, is a question of fact for the jury alone. 7 Ind. R. 368. Whether a contract is original or collateral, may be a question of construction, and then it is for the Court; but it is often regarded as a question of fact, and then it is for the jury. 1 Pars. on Cont. 500. See *Sinclair* v. *Richardson*, 12 Verm. R. 33; *Flanders* v. *Crolius*, 1 Duer, 206.

We think, in the case at bar, it was a question for the Court, sitting as a jury, to determine whether the credit was given to the persons who really obtained the horse, or to the defendant, and we cannot disturb such finding, unless it is flagrantly wrong. Upon looking to the evidence, we cannot say that it is such as brings the case within the class in which we will say that a finding should be reversed. And we think, also, that the proper construction

of the terms of the promise is, that it was but a collateral undertaking.

Nov. Term, 1858.

Per Curiam.—The judgment is affirmed with costs.

D. S. Major, for the appellant (1).