E. BLOOM *v.* McGRATH & COMPTON.

53  249
87  594

1. AMENDMENT. *Filing itemized bill of particulars, after motion to quash process.*
   The account filed with the declaration consisted of a single item, thus, "To amount of bill rendered, $294." The defendant moved to quash the process, because no itemized bill of particulars had been filed before its issuance. The plaintiffs then moved to file such an itemized bill of particulars. *Held*, that the court did right in over-ruling the motion to quash, and in giving leave to file the amended account.

2. EVIDENCE. *Conversations. Impressions. Recollection.*
   It is not competent for a witness to give his *impressions* of a conversation, as something apart from and independent of what was said; but where the witness speaks of his " impressions " of the conversation, using the word as synonymous with " recollection," his testimony as to what was said in the conversation is competent.

3. CIRCUIT COURT. *Practice. Account sworn to. Code* 1871, § 782. *Right to judgment, how waived.*

Where the account filed with the declaration is sworn to, and the plea is unaccompanied by an affidavit of denial, if the plaintiffs fail to ask for a judgment, and do not object to the defendant's testimony when offered, they waive their rights under the statute and consent to a jury trial, and it is error to then instruct the jury to disregard the defendant's evidence, denying the correctness of the account.

4. STATUTE OF FRAUDS. *Promise to answer for debt of another.*

A parol promise to answer for the debt, default or miscarriage of another, for which that other continues liable, is within the Statute of Frauds. Nor does it alter the case that the assumption of the party sought to be charged was simultaneous with the creation of the debt. In such a case the test must be whether the party who received the consideration was or was not bound. Citing *Sweatman* v. *Parker,* 49 Miss. 19.

5. ADMISSION. *Expression of opinion as to legal liability. Effect thereof.*

An admission by a party, which amounts to no more than an expression of his opinion that he is legally bound to pay a debt, cannot create a liability for the debt, if none existed before.

6. STATUTE OF FRAUDS. *Case in judgment. Promise to see bill paid.*

C., one of the plaintiffs, thus states their case : The plaintiffs were wholesale grocers in New Orleans. A. was a retail grocer in Jackson. The defendant came to the plaintiffs, and asked one of them to sell goods to his nephew A., saying that he (the defendant) " would be responsible for or would see the bills paid," witness cannot tell which. The goods were ordered by A., delivered to him, and charged against him on the plaintiffs' books. No charge was made against the defendant on the books, nor was any communication had with him on the subject until A. failed, when the plaintiffs informed him they held him liable, and he denied his liability. *Held,* that the testimony failed to show a valid legal obligation on the defendant, and that the plaintiffs' case was not strengthened by the statement of C. that the plaintiffs would not have sold goods to A. on a credit.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

At the January Term, 1873, the plaintiffs McGrath & Compton filed a declaration in assumpsit against E. Bloom, founded on an open account. With the declaration was filed a mere statement of the balance claimed to be due, thus, " To amount of bill rendered, $294," without any itemized account whatever. At the return term the defendant E. Bloom filed

a plea of *non assumpsit*, with a notice of the defence he would make under the plea; viz., that the goods were sold to one A. Bloom, and the defendant never promised to pay for them, or guaranteed the payment of the bill.

At the December Term, 1873, the defendant moved the court to quash the process and dismiss the suit; and the plaintiffs moved for permission to file an itemized account. The court ordered the amended account to be filed, and refused to quash the process or dismiss the suit. The itemized account was accordingly filed, and the case was continued.

At the January Term, 1876, there was a verdict for the plaintiffs. The defendant moved to set aside the verdict, on the grounds that the court erred in admitting evidence for the plaintiffs and in granting instructions for the plaintiffs, and that the verdict was against the law and the evidence; which motion was by the court overruled, and a bill of exceptions filed.

The evidence in the case was as follows: James Compton, one of the plaintiffs, testified that the defendant E. Bloom asked him to sell goods to his nephew A. Bloom, and that he (E. Bloom) would be responsible for the amount, or would see the bill paid; that the witness did not know A. Bloom, and his house would not have credited him, nor had they ever credited him before this account was made; that the goods were charged to A. Bloom on the plaintiffs' books, and shipped to him at Jackson, the accounts being always rendered to him, and never to E. Bloom. After A. Bloom ran away the defendant came to witness and told him his nephew had gone, but left some effects, which he would sell, and pay the plaintiffs the proceeds of the sale. The witness, however, refused to receive the proceeds of sale when offered to him, and told E. Bloom that the plaintiffs looked to him for payment. E. Bloom then denied his liability. The account sued on was made out against A. Bloom, and changed to E. Bloom by the plaintiffs' attorneys before suit. John A. Galbreath, for the plaintiffs, testified that in 1873, after A. Bloom ran away, the defendant E. Bloom and he had a conversation about the claims sued on. E. Bloom said, " that he would have it to pay." Such was the " impression " of witness as to the

conversation. By "*impression*," the witness explained that he meant his recollection of the substance of the conversation. The defendant thereupon objected to this testimony as to the conversation, and moved to exclude it, but the court decided it competent, and the defendant excepted.

A. J. Kerr, for the plaintiffs, testified that after A. Bloom ran away he had a conversation with E. Bloom, in which E. Bloom said that A. Bloom owed a debt to McGrath & Compton, which he, E. Bloom, would have to pay, or would pay, or see it paid, as he, E. Bloom, was responsible for it.

E. Bloom, the defendant, testified in his own behalf that the plaintiffs had some flour in Jackson in 1872, and he told Compton if he would let A. Bloom have some of that flour, he, E. Bloom, would see that A. Bloom should pay for it; that he never did authorize the plaintiffs to furnish goods generally to A. Bloom on his credit, nor did they ever present to him any such account until after A. Bloom's failure. He had the conversations with Galbreath and Kerr, but did not tell them he was liable for the debt.

Henry Strauss, for the defendant, testified that soon after A. Bloom left Jackson the witness told the plaintiff Compton that A. Bloom owed the witness some money, which he expected he should lose; and Compton replied " that he would not be surprised if he, Compton, was in the same fix." This was all the evidence in the case.

The court instructed the jury for the plaintiff as follows: —

1. If the jury believe from the evidence that at the request of E. Bloom, and on his promise to pay for them, or on his assurance to Compton that he would be liable or responsible for them, the goods sued for were delivered to A. Bloom, then E. Bloom is liable for them, and the jury should find for the plaintiffs.

2. The fact that the goods were furnished to A. Bloom, and for his use, does not change the rule stated in the first instruction above, such a transaction not being a promise by E. Bloom to pay another person's debt, but an original liability to said McGrath & Compton created by E. Bloom himself.

3. ·If the jury believe from the evidence that goods were

sold and furnished on the promise of E. Bloom to pay for them, or see that they were paid for, then the case is not one of mere recommendation of A. Bloom by E. Bloom, but a direct undertaking by E. Bloom, on which he is liable without writing, and the jury should find accordingly.

4. The defendant, in order to attack the correctness of the sworn itemized account sued on in this cause, should have filed with his plea an affidavit pointing out the particular items thereof which he claims are not correct, and if the defendant fails to do this, the law presumes the items of the account to be correct as sworn to by the plaintiffs.

To the granting of these instructions the defendant objected, and reserved exceptions.

It is unnecessary to set out the instructions granted for the defendant, as they did not explain or modify the instructions for the plaintiffs.

The errors assigned are : —

1. Allowing the plaintiffs to file the itemized account, and overruling the defendant's motion to dismiss the case.

2. Granting the fourth instruction for the plaintiffs.

3. Admitting the testimony of Galbreath objected to by the defendant.

4. Overruling the motion of the defendant for a new trial.

*Johnston & Johnston*, for the plaintiff in error.

1. The court erred in allowing the plaintiffs at the trial to file an itemized account, none having been filed with the declaration.   The statute requires that in all actions on open accounts there shall be filed with the declaration before process issues an itemized copy of the account sued on, and if this is not done the plaintiff is not allowed to introduce evidence to support his action.   Code 1871, §§ 380, 621 ; *Burrus* v. *Fisher*, 27 Miss. 418.

2. The testimony of Galbreath objected to by the defendant was incompetent, on the ground that the witness was allowed to testify as to his impression and not as to facts.

3. On the whole case as developed by the evidence no legal liability is established against the defendant E. Bloom.   The evidence introduced by the plaintiffs fails to show such liability.   E. Bloom's promise, if he made any at all, was within

the Statute of Frauds, being a verbal promise to pay the debt of another.   Code 1871, § 2892.

The goods were sold and delivered to A. Bloom, the account was opened and kept in the plaintiffs' books, in the name of A. Bloom, and accounts were regularly rendered to him, and never rendered to E. Bloom.   From time to time A. Bloom made payments directly to the plaintiffs, and the whole course of dealings was between the plaintiffs and A. Bloom. It was perhaps a year after the insolvency of A. Bloom before the plaintiffs even asserted any liability against the defendant. The plaintiffs evidently held A. Bloom liable to them for the account, charging him with the goods.   A. Bloom being liable for the goods, the promise of the defendant was a collateral obligation to be answerable for A. Bloom's debt, and was therefore within the Statute of Frauds.

The instructions given by the court were erroneous in announcing a different theory as to the defendant's promise, and the evidence fails to establish any legal liability against the defendant.

*Shelton & Shelton,* for the defendants in error.

1. The court below did right in allowing the appellees to file their itemized account, and in overruling the appellant's motion to dismiss the cause.   Amendments are allowed on the most liberal terms, and are purely within the discretion of the court; and unless this discretion has been abused, this court will not interfere with its exercise.   Code 1871, § 621; 47 Miss. 76; 44 Miss. 79; 41 Miss. 245.

2. Galbreath's testimony was competent evidence.   A mere impression made on the mind of a witness at the time of a conversation, other than what was said, is not evidence; but his subsequent impression of the substance of the conversation, derived from his recollection of the substance of what was said, is evidence.   1 Greenl. Evid. § 440; 16 Me. 247; 52 Me. 504; 41 N. H. 67.

3. The fourth instruction for the appellees is correct.   The account sued on being sworn to and no counter affidavit filed, the account should be treated as proved on the trial.   Code 1871, § 782; Acts 1875, p. 161; 50 Miss. 153; 40 Miss. 209; 44 Miss. 503.

The appellees' first and third instructions are not erroneous. The appellant is here sued as an original and primary debtor, not as a guarantor.    The law relative to guarantors is not applicable here.    These instructions say that if the jury believe that the account was made at the request of the appellant, and on his promise to pay for them, or be responsible for them, then he is liable, and they should find accordingly.    The jury did so believe, and found accordingly.    The instructions are law, and the belief of the jury is the truth.

4. The verdict not being against the preponderance of evidence, will not be disturbed.    50 Miss. 32; 45 Miss. 143; 36 Miss. 458; 21 Miss. 599, 656; 18 Miss. 169.

Compton testified that the appellant sought him, and requested him to furnish goods to A. Bloom, the price of which the appellant would pay or see paid.    Credit was given to the appellant, not to A. Bloom.    The appellees never had, and would not then have credited A. Bloom.    Subsequent to A. Bloom's flight the appellant stated to both Kerr and Galbreath separately that he was liable for the debt sued on.    The primary liability of the appellant arose out of his contract with Compton, upon which Compton ordered the goods from his house in New Orleans to be sent to A. Bloom; and the fact that the account on the firm books was in the name of A. Bloom cannot affect the appellant's original liability.    The appellant is contradicted on every material point by one or more of the other witnesses.    Where the evidence is conflicting the courts will not disturb the verdict of the jury.    48 Miss. 422, 630.    Manifest justice has been done, and this court will not remand the cause.    50 Miss. 153; 40 Miss. 209; 35 Miss. 540.

CHALMERS, J., delivered the opinion of the court.

The plaintiffs filed with their declaration an account consisting of a single item, thus, " To amount of bill rendered, $294." The defendant having made a motion to quash the process, under § 580 of the Code, which prescribes that in suits on open accounts there shall be filed before the issuance of process an itemized bill of particulars, the motion was met by a counter one on the part of the plaintiffs for leave to file such itemized

account. Thereupon the court overruled the motion to quash
the process, and gave leave to file the amended account. This
action of the court constitutes the first assignment of error.
We think there was no error in this particular. The power of
the court to permit the amendment was ample under § 621 of
the Code.

There was no error in the admission of testimony. It is not
competent for a witness to give his impressions of a conversa-
tion as something apart from and independent of what was
said; but it is evident that in the case at bar the witness used
the word " impression" as synonymous with " recollection."

It was erroneous for the court to instruct the jury that they
must disregard the defendant's evidence denying the correct-
ness of the account sued on, because the account was sworn
to and the plea was unaccompanied by an affidavit of denial.
The parties had gone to trial on the pleadings without ob-
jection, and without any motion by the plaintiffs for a judgment
under the statute. It was too late, after having examined
witnesses at length upon the merits without objection, and
with no motion to exclude the testimony, to seek the advan-
tage of the statute by an instruction to the jury. The plaintiffs,
by omitting to ask for a judgment or to object to the intro-
duction of the evidence, had waived their rights under the
statute and consented to a trial by jury.

It is urged, however, that there will be no reversal on account
of this erroneous instruction, because on the whole case the
verdict was right. This necessitates an examination of the case
upon the merits.

The defendant E. Bloom was sued upon an account for
goods sold and delivered to his nephew A. Bloom, upon the
ground that they had been sold upon the credit of the uncle
and not of the nephew, and that the promise of the former to
pay for them was an original and not a collateral undertaking,
and was therefore binding, though verbal.

Under what circumstances assumptions of the debt of
another are within or without the operation of the Statute of
Frauds has undergone such frequent examination in our courts,
that any extended discussion of the question is not believed to
be called for in the present instance.

Perhaps no more satisfactory statement of the true principle governing such cases has been or can be given than was arrived at in the case of *Sweatman* v. *Parker*, 49 Miss. 19, 28, in which it was declared that " the only test and criterion by which to determine whether the promise needs to be in writing is the question whether it is or is not a promise to answer for a debt, default or miscarriage of another, *for which that other continues liable.*"

The original debt involved in that case was one which had been contracted before the assumption upon which it was sought to render the defendant liable, and the test of his liability was made to depend upon the question whether the original debtor was released by the defendant's assumption. The test is no less satisfactory where, as in the case at bar, the assumption of the party sought to be charged was simultaneous with the creation of the debt. In such a case the test must be whether the party who received the consideration was or was not bound. If he was, then there can be no valid obligation by parol upon any one else to pay the debt. The intent of the Statute of Frauds is, that no obligation shall be created by parol which shall be binding both upon him who receives the consideration and upon another person who undertakes to pay the debt. If one is bound the other is not.

Let us test the case at bar by this criterion. We shall leave out of view the testimony of the defendant, except to say that it utterly negatives the idea of any liability upon him.

James Compton, one of the plaintiffs, testified that he resided in Jackson, and was a member of the firm of McGrath & Compton, wholesale grocers in the city of New Orleans, where his partner resided and conducted the business; that in the summer of 1872 the defendant came to him and " asked him to sell goods to A. Bloom, nephew of the defendant, saying that he, the defendant, would be responsible for, or would see the bills paid. The witness did not remember, and was unable to give, the language or words used by the defendant, except to say that the substance and purport of the conversation was that the defendant would pay or see paid all the bills for goods sold by the witness's firm to his nephew." Shortly thereafter the goods began to be delivered. They were ordered by the

nephew, A. Bloom, directly by letter to the firm in New Orleans, or by memoranda handed to Compton in Jackson and by him transmitted to his firm. The goods were charged on the books of the concern to A. Bloom, and shipped directly to him. Monthly statements of the account were rendered to him, and from time to time he made payments thereon. The name of E. Bloom (the defendant) was not upon the books of the firm, nor was any communication whatever had with him on the subject of the accounts until the nephew failed and ran away, after which Compton informed him that the firm held him liable for the debt, a liability which the defendant at once denied. The account, when handed to the attorneys for suit, was made out against A. Bloom. E. Bloom's name did not appear upon it until placed there by the attorneys.   ·

Compton stated that the goods were sold altogether upon the credit of the uncle, and that his firm would not have sold goods to the nephew except for cash. In rebuttal of this statement, however, a receipt from the firm, executed before the date of the first conversation between Compton and E. Bloom, was produced, in which was acknowledged the receipt " from A. Bloom of forty dollars on account," which would seem to show that there had been credit dealings between the parties previous to the arrangement with the uncle.

Two other witnesses for the plaintiffs testified in substance that, after the absconding of A. Bloom, the defendant stated to them that he would pay, or that he would have to pay, the debt of his nephew to the plaintiffs. We attach but little importance to this testimony. It only showed at most that the defendant then thought that he was legally bound. An expression of his opinion to this effect could not create a liability if none existed.

The testimony of Compton, we think, fails to show a valid legal obligation upon the defendant to pay the debt. It is at most equivocal and doubtful, and therefore insufficient. He is unable to say whether the defendant's promise was to pay the debt or to see it paid. If the latter, the natural presumption would be that it was a collateral undertaking and consequently void. His statement, that he did not know A. Bloom, and would not have sold him goods on credit, does not

strengthen his case. He might be unwilling to sell the nephew goods on his own credit, and yet be entirely willing to do so upon the suretyship or guaranty of the uncle. The question at issue is whether the goods were sold upon the credit of the uncle alone, or whether they were sold to the nephew upon the suretyship of the uncle. The testimony of the witness in relation to the language used by the defendant makes one theory as probable as the other, while the subsequent dealings between the parties greatly incline the scales in favor of the defendant; and this we say in view of the plaintiff's testimony alone, without regard to that for the defendant. 　　　*Judgment reversed and cause remanded.*