## H. S. COLE *vs.* J. G. HUTCHINSON.

### January 11, 1886.

**Statute of Frauds—Promise to Pay Debt of Another.**—In an action for goods sold and delivered, they having been delivered to another than the defendant, and the defence being that the latter's promise to pay for them was within the statute of frauds and void, an instruction that, to bring a promise within the statute, as one to answer for the debt of another, there must be in existence at the time when the promise was made an original liability upon which the collateral promise is based, is erroneous.

**Same—Goods delivered to Another—Credit given to Receiver.**—Where there is a promise to pay for goods to be delivered to another, if, at the delivery of the goods, any credit is given to such other, as purchaser of the goods, the promise is collateral and within the statute.

Appeal by defendant from an order of the district court for Otter Tail county, *Baxter,* J., presiding, refusing a new trial.

*M. R. Tyler*, for appellant.

*Rawson & Houpt*, and *Clapp, Woodward & Cowie*, for respondent, cited *Larson* v. *Jensen*, 53 Mich. 427; *Jones* v. *Cooper*, 1 Cowper, 227; *Chase* v. *Day*, 17 John. 114; *Fitzgerald* v. *Morrisey*, 14 Neb. 198; *West* v. *O'Hara*, 55 Wis. 645.

GILFILLAN, C. J.  Action for goods sold and delivered.  The goods were selected by, and delivered to, James D. Hutchinson, for his use, and the prices for them agreed upon by him and plaintiff.  The defendant had no part in it, nor connection, with it, unless by virtue of an alleged promise by him to plaintiff's firm, made some time before, when James D. was not present, to pay for such goods as the latter should take.  From the evidence as to this promise, plaintiff claims that it was an order for goods to be delivered to James D., and that the sale, when made by the delivery of the goods, was to defendant, and that the debt thus accruing was his debt as purchaser.  On the other hand, defendant claims that, at most, it proves only a promise to answer for any debt that James D. might incur in the purchase of the goods, and that it is therefore within the statute of frauds, and, not being in writing, is void.  The evidence of the conversation in which the promise was made, was such that the jury might have found the promise as claimed by either party, and the verdict could not have been disturbed.

The court below instructed the jury, in substance and effect, that, to bring a promise within the statute of frauds as one to answer for the debt of another, there must be in existence at the time when the promise is made an original liability upon which the collateral promise is founded.  The court may have so stated the law through inadvertence, but it must nevertheless have set the jury astray.  The majority of the cases arising under this part of the statute of frauds, and upon which elaborate discussion has been had, have been cases where there was no debt or liability in existence when the promise was made.  To show how far wrong such a statement of the law is we need go no further than to suppose the promise in this case to have been: "You sell to James D. whatever goods he wants; and if he does not pay for them, I will."  The terms of such a promise would not contemplate a sale to defendant, nor upon his credit as

purchaser and principal debtor, but only a sale to James D., he becoming primarily liable for the price, and the defendant to be liable only in the event of his failure to pay. None could doubt that such a promise would be collateral and within the statute of frauds. For the error in this instruction there must be a new trial.

In view of such new trial we deem it proper to consider a feature of the case not yet alluded to : that is, the fact indicated, if not established, by the evidence that when James D. got the goods, he gave his promissory notes for the price. This would not only have justified the jury in finding that the credit was given to James D., (so as to make defendant's promise collateral,) but, certainly in the absence of adequate explanation, (and the evidence does not suggest any,) it would be conclusive upon the point. Although the promise were such as to authorize a delivery of the goods to James D. on the credit of defendant as purchaser, yet if that was not done,—if they were in fact sold and delivered to James D., and credit given to him as purchaser,—then the original debt for them is his debt, and the case is within the statute.

In *Cahill* v. *Bigelow*, 18 Pick. 369, Chief Justice Shaw states as the test whether the promise is collateral when it is made before the credit is given : "Was credit given to the person receiving the goods ? If it was, then such promisor is a guarantor only, undertaking to pay another's debt. If no credit was given to the person receiving the goods, then the promisor is himself debtor for goods sold to him, and delivered to another person by his order." 3 Kent, Comm. 123, states it : "If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral, and must be in writing." This, as the general rule, is followed by a practically unbroken line of decisions. From the mass of them we cite only a few. *Brown* v. *Bradshaw*, 1 Duer, 199; *Cowdin* v. *Gottgetreu*, 55 N. Y. 650; *Post* v. *Geoghegan*, 5 Daly, 216; *Swift* v. *Pierce*, 13 Allen, 136; *Bugbee* v. *Kendricken*, 130 Mass. 437; *Walker* v. *Richards*, 39 N. H. 259; *Welch* v. *Marvin*, 36 Mich. 59; *Boykin* v. *Dohlonde*, 37 Ala. 577; *Billingsley* v. *Dempewolf*, 11 Ind. 414; *Elder* v. *Warfield*, 7 Har. & J. 391; *Wyman* v. *Gray*, Id. 409.

The credit mentioned in stating the rule must be understood credit

as purchaser of the goods, for the receiver of the goods might by express terms assume the liability of a guarantor. He might undertake to pay in case the other did not. But where both are liable, whichever is original, primary debtor, the promise of the other must of necessity be collateral. If the debt be a debt of the receiver of the goods, then the promise of the other is to answer for his debt, and is within the statute. Upon whose credit as purchaser the goods are sold will usually be determined by what takes place when they are called for and delivered,—by what takes place between the parties to the transaction,—not by any mental reservation nor secret motive on the part of either. In this case the giving and taking of the notes appears to have been a part of the transaction, both parties concurring in it. It is different from charging the price against the receiver in the seller's books, or demanding pay from him, or suing him for it, for that is the act of one of the parties after the fact, and is evidence, like an admission by him; and it may be shown to have been due to a misapprehension.

Order reversed.