[No. 11422. In Bank. — November 23, 1889.]

ISAAC HARRIS ET AL., APPELLANTS, v. JOSEPH FRANK, RESPONDENT.

APPEAL — REVIEW OF CONFLICTING EVIDENCE. — When the evidence is substantially conflicting, the findings of the court below will not be disturbed upon appeal.

GUARANTY — ORIGINAL CONTRACT — QUESTION OF FACT — CHARGES TO CORPORATION. — Whether an agreement by a third party to pay for supplies furnished to a corporation is one of original promise or of guaranty, is a question of fact to be determined from the circumstances of the case. It is not determined by the fact that charges are made and statements furnished to the corporation, if the promisor so ordered; but if any credit was in fact given to the corporation, or it was treated as in any degree liable for the indebtedness, the promisor cannot be charged as an original contractor, but at most as a mere guarantor.

ID. — STATUTE OF FRAUDS — PLEADING — ASSUMPSIT — COMMON COUNTS — GENERAL DENIAL — EVIDENCE. — When the defendant is charged as an original debtor under the common counts in *assumpsit*, without intimation as to a guaranty, it is not necessary for him to plead specially that the contract was one of guaranty, and was void under the statute

of frauds, because not in writing; but he may in such case avail himself of the statute under the general denial.

Id. — Record on Appeal — Objections by Respondent — Presumption. — It is not necessary that the record upon appeal by a plaintiff in an action of *assumpsit* should show that the defendant objected to evidence of a void oral contract of guaranty, since the objections and exceptions of the respondent have no place in the record, and the presumptions are in favor of the rulings and findings of the court below.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*P. Reddy,* and *W. H. Metson,* for Appellants.

The fact that the goods were charged to the corporation by order of the defendant or for convenience is consistent with the fact that credit was given to the defendant, and that he was considered primarily liable for the goods. (1 Reed on Statute of Frauds, sec. 91; *Sanford* v. *Howard,* 39 Ala. 684–691; 68 Am. Dec. 101; *Scott* v. *Hyatt,* 24 Ala. 494; *Whitman* v. *Bryant,* 45 Vt. 512; *Green* v. *Disbrow,* 7 Lans. 381–387; *Owens* v. *Stevens,* 78 Ill. 462; *Hartley* v. *Varner,* 88 Ill. 561; *Briggs* v. *Evans,* 1 E. D. Smith, 193; *Hazen* v. *Bearden,* 4 Sneed, 48; *Boykin* v. *Dohland,* 37 Ala. 577; *Dean* v. *Tallman,* 105 Mass. 443; *Swift* v. *Pierce,* 13 Allen, 136; *Burkhalter* v. *Farmer,* 5 Kan. 477; *Langdon* v. *Richardson,* 58 Iowa; 610.) The accounts were presented to the officers of the company in accordance with the request of defendant, and in pursuance of the contract, and that is sufficient to explain that circumstance. (1 Reed on Statute of Frauds, sec. 91; *Hazen* v. *Bearden,* 4 Sneed, 48, and cases above cited.) The fact that plaintiffs did not demand payment from defendant personally until November, 1880, is unimportant, without evidence to show that the firm were in need of it. (*Stone* v. *Tupper,* 58 Vt. 409.) The statute of frauds was not pleaded, and the record shows that there

was no objection to the evidence. The court could not of its own motion interpose the statute of frauds after the defendant had waived it, but must give the evidence its full value. (Brown on Statute of Frauds, sec. 508; *League* v. *Davis,* 53 Tex. 14; *McLeod* v. *Neil,* 16 Col. 397; *Nunez* v. *Morgan,* 77 Cal. 428; *Dalton* v. *Dalton,* 14 Nev. 426; *Sherwood* v. *Siscor,* 5 Nev. 349.) There being no contract or promise to pay on the part of the company, defendant's promise could not have been collateral. (*Whitman* v. *Bryant,* 49 Vt. 514; *Boyce* v. *Murphy,* 46 Am. Rep. 567; 1 Reed on Statute of Frauds, sec. 84, and cases cited; *Whiting* v. *Sullivan,* 7 Mass. 107.) The evidence proves an original contract without substantial conflict.

*Manuel Eyre,* and *M. S. Eisner,* for Respondent.

The evidence is inconsistent with an original undertaking by Joseph Frank, and shows that the corporation was not discharged from liability. If any credit whatever was given to the corporation, the promise was collateral and void, because not in writing. (Civ. Code, sec. 1624, subd. 2; sec. 2794, subd. 2; *Brown* v. *Brandshaw,* 1 Duer, 199; *Rogers* v. *Kneeland,* 13 Wend. 114; *Welch* v. *Marion,* 36 Mich. 59; *Bugbee* v. *Kendricksen,* 130 Mass. 437; *Studley* v. *Barth,* 54 Mich. 6; *Langden* v. *Richardson,* 58 Iowa, 610; *Cole* v. *Hutchinson,* 34 Minn. 410; *Cahill* v. *Bigelow,* 18 Pick. 369; *Bressler* v. *Pendell,* 12 Mich. 224; *Noyes* v. *Humphreys,* 11 Gratt. 643; *Cutler* v. *Hinton,* 6 Rand. 519; *Ware* v. *Stevenson,* 10 Leigh, 155; *Tileston* v. *Nettleton,* 23 Mass. 509; *Matson* v. *Wharon,* 2 Term Rep. 80; *Leggat* v. *Reid,* 1 Car. & P. 16; *Cowden* v. *Gottgetreu,* 55 N. Y. 650.) The question to whom credit was given is one of fact, and the fact that accounts were rendered to the person receiving the benefit is strong evidence that credit was given to him. (1 Reed on Statute of Frauds, sec. 91; *Boykin* v. *Dohland,* 37 Ala. 578; *Billingsley* v. *Demperwolf,* 11 Ind. 414; *Cowden* v. *Gott-*

*getreu*, 65 N. Y. 650; *Glenn* v. *Tallman*, 105 Mass. 443; *Heun* v. *Lehmen*, 54 Mo. 45; *Brown* v. *McGrath*, 53 Miss. 294; *Eshleman* v. *Harnish*, 76 Pa. St. 97; *Moshier* v. *Ketchell*, 87 Ill. 18; *Pettit* v. *Braden*, 55 Ind. 201.)    The action being *indebitatus assumpsit*, defendant could avail himself of the statute of frauds under the general denial. (*Boston Dock Co.* v. *Dewer*, 6 Gray, 446; *Durant* v. *Rogers*, 71 Ill. 124; *Taylor* v. *Merrill*, 55 Ill. 32; *Eddy* v. *Roberts*, 17 Ill. 505; *Runde* v. *Runde*, 59 Ill. 98; *Hite* v. *Wells*, 17 Ill. 88; *Chaplin* v. *Parish*, 11 Paige, 405; *Hunter* v. *Randall*, 62 Me. 425; 16 Am. Rep. 490; *Alger* v. *Johnson*, 4 Hun, 412; Browne on Statute of Frauds, sec. 508; 1 Reed on Statute of Frauds, sec. 516.)

Fox, J.— Since the trial in the court below the defendant Frank has died, and the case is prosecuted here against his executors.

The action is *indebitatus assumpsit.*    Complaint in two counts; one for goods, wares, and merchandise sold and delivered, and the other for moneys advanced, paid out, and expended, both alleged to be for and at the special instance and request of defendant.    Answer, specific denial of each allegation of the complaint, and a plea that the plaintiffs, who sue as partners in business, have not complied with the requirements of sections 2466 and 2468 of the Civil Code.    On the latter plea no point is made on this appeal.    Judgment went for defendant; motion for new trial made and denied, and plaintiffs appeal.    The appeal is based entirely on the ground that the evidence is insufficient to support the findings.

The pleadings in this case give no intimation as to what is the real character of the action.    The leading facts, as developed upon the trial, are: The plaintiffs were partners carrying on a general merchandise business at Independence, in Inyo County.    The defendant was an aged and retired man of some means, residing at San Francisco.    His sons and son-in-law were the owners of

most of the capital stock and the principal officers of the
Kearsarge Mill and Mining Company, a corporation
owning and operating a mill and mine near Indepen-
dence. This corporation had for a year or more an ac-
count at plaintiffs', from whom they purchased supplies
used in its mining operations, and upon whom it had
also drawn, from time to time, for moneys in the payment
of its current expenses, making payments, from time to
time, as stocks were sold or moneys were otherwise
realized by the company. In May, 1879, the balance
against the company was something over two thousand
dollars, when plaintiffs notified Gray, the superintendent,
that the credit of the company was stopped, and they
could not give it further accommodation. Gray told
them that the defendant, his father-in-law, was coming
up in a few days, and that the company would arrange
with him to secure them for such accommodation as it
might need, and it would be all right, whereupon they
consented to let him have such further supplies as might
be absolutely necessary for the time being, and they did
so. In the latter part of May, 1879, the defendant did
go up and visit the mine. He had never been there be-
fore, and had no personal interest in the property or in
the stock of the company. After visiting the mine in
company with an expert, he went to the store of plain-
tiffs and made some trifling purchase, and then had a
conversation with the plaintiffs on the subject of the
company's account and dealings with plaintiffs. Just
what that conversation was, and the legal effect of it, is
the whole subject-matter of dispute in this case.

It is conceded on all hands that no writing was made
by or between the parties. But plaintiffs contend, with
great earnestness, that the conversation was such as
amounted in law to an original contract on the part of the
defendant, giving to plaintiffs *carte blanche* to furnish
the company with goods and money to any extent that
the officers might call for, charge the same to the com-

pany as before, adding or including the present balance due, render monthly statements to the officers, and that he, defendant, would pay the bills, payments to be received through the company as theretofore.

On the other hand, it is contended on behalf of the defense that nothing which transpired in that conversation was such as can be held in law to be an original contract on the part of the defendant to pay for goods or money furnished to or for the company, or thereafter to be so furnished, or even such as to make the defendant a guarantor for the company. The evidence is conflicting as to what was said or done at that conference. According to that on behalf of plaintiffs, the conversation was principally between the plaintiff Rhine and the defendant, but the plaintiff Harris and one Seeley were also present at the time. The two latter do not fully corroborate the former, but both of them disclaim having heard all the conversation which occurred between Rhine and the defendant. If the case rested, however, upon the oral testimony alone of these three, there would be much ground for argument that the contract was an original one on the part of the defendant, under which he would be liable for the goods and money furnished after the date of the contract.

But the case does not rest upon their oral testimony alone. The defendant flatly contradicts the testimony of plaintiffs as to what occurred at that time. According to his evidence, all that he said at that time amounted to a mere expression of opinion as to the merits of the mine, and as to the fact that the plaintiffs would not ultimately "lose anything by the boys."

It is contended that no weight should be given to his evidence, for when called to testify he was old and feeble, and his memory impaired. Taken by itself, we should not feel disposed to give his testimony much weight. But there is much evidence beside his which is in conflict with that portion of plaintiffs' testimony which tends to

show an original contract. A conversation between the
two partners immediately after the defendant had left
their store tends to show that neither of them at the
time understood his agreement to be an original con-
tract, but a mere guaranty, and Harris told Rhine at
the time that he was a fool, or words to that effect, for
not having it in writing. Statements subsequently
made by them to others are to the same effect. The
testimony of witnesses called on both sides, and exam-
ined as to what the old gentleman said he was going to
do, and as to what he was requested by the superintend-
ent to do, also goes to show that his purpose, and all
that was requested or expected of him was, not to open
for himself an account in his own or any other name,
but simply to establish the credit of the company, so
that it could continue to receive its accustomed accom-
modation at plaintiffs' store.

The subsequent course of business also furnishes
strong circumstantial evidence in conflict with the
theory of original contract. The fact that the charges
were thereafter made to the company, and the monthly
statements rendered to its officers, would not of itself
have any weight in that direction, for, according to the
testimony of plaintiffs, this was in accordance with their
instructions. But the law is clear that if any credit was
in fact given to the company, or it was in any degree
liable for the indebtedness, then the defendant cannot be
held as an original contractor, but at most as a mere
guarantor. (*Brown* v. *Brandshaw*, 1 Duer, 199; *Rogers
Kneeland*, 13 Wend. 114; *Welsh* v. *Marvin*, 36 Mich. 59;
*Bugbee* v. *Kendricksen*, 130 Mass. 437; *Langden* v. *Rich-
ardson*, 58 Iowa, 610; *Cole* v. *Hutchinson*, 34 Minn. 410;
*Noyes* v. *Humphreys*, 11 Gratt. 643; *Robertson* v. *Hunter*,
6 S. E. Rep. 850.) Many other cases could be cited to
the same effect. And the question whether the contract
was one of original promise or of guaranty merely is
always one for the jury (or in this case for the trial

court) to determine from the surrounding circumstances of the case. (*Dean* v. *Tallman*, 105 Mass. 443; *Glenn* v. *Lehnen*, 54 Mo. 45; *Cowden* v. *Göttgetreu*, 55 N. Y. 650; *Bloom* v. *McGrath*, 53 Miss. 249; *Eshlman* v. *Harnish*, 76 Pa. St. 97; *Moshier* v. *Ketchell*, 87 Ill. 18; *Petit* v. *Bradon*, 55 Ind. 201.) The fact, as shown conclusively by the evidence, and uncontradicted, that the plaintiffs continued to furnish the company with money and goods as they required the same until the mine closed down in December, 1879; that neither during that time, nor ever until November, 1880, did they make any report to or demand on the defendant, or even intimate to him the state of the account; that during all that time they were at different times calling upon the officers of the company for money; that all the money they ever did receive was from the officers of the company; that shortly before the mine closed down they made advances to the amount of twelve hundred dollars in money at the special and personal request of the president, and on his assurance that the company would place a goodly amount to their credit in San Francisco; — all these are circumstances tending strongly to show that the plaintiffs regarded the company as their original debtor, and not the defendant.

There is also a sharp and substantial conflict in the evidence as to what occurred at the house of defendant when plaintiff called upon him in November, 1880, in reference to the account. The plaintiff Rhine, who made the call, testifies substantially that he then told defendant that he had been unable to collect the bill from the company, and demanded that he should pay it, as he had contracted to do, and that defendant told him that he had no money, but proposed to assign to him certain mortgage securities in satisfaction of the bill. Defendant denies that he made any such offer, or that Rhine claimed that he, the defendant, was the debtor; but in the same connection he says he was sick, and got

excited, and does not remember exactly what Rhine did say.

Daniel Harris testifies that he was present at that interview, and that what transpired was as follows: "Rhine commenced to say, 'I have got no money from the boys yet'; and Mr. Frank said, 'Well, I have not got anything to do with the boys.' 'Well,' Mr. Rhine says, 'I would like to have the money.' 'Well,' he said (Frank), 'do I owe you anything?' and Mr. Rhine said, 'No; you don't owe me anything, but you could see the boys, you know, so they could pay me along, even if it is not all at once.' And later on Frank said: 'Did I promise you anything?' and he said, 'No.' 'Do I owe you anything?' He said: 'No; . . . . but you go down to the boys, and tell them, so that I can get something out of them'; and he says he has nothing to do with it, nor will he have anything to do with it, whatever."

There are several other instances in the record where Mr. Rhine is directly contradicted by other witnesses, as to what he has himself said about this transaction at different times.

The court below has, as it was its duty to do, found upon the question of whether or not the defendant became an original promisor for the payment of this debt; and in view of the substantial conflict which we find in the evidence, oral and circumstantial, bearing upon the question, we cannot disturb that finding.

As we have said, there is also a conflict as to whether or not he became a guarantor; but that conflict is evidently not so marked or substantial. If there was such a contract, however, not being in writing, it was void under sections 1624 and 2794 of the Civil Code. Plaintiff contends that it was not void under those sections, but simply voidable, and that defendant has waived any defense under the statute by failing to plead it, and because "it does not appear from the record" that the evidence was objected to. The complaint being upon

common counts only, with no intimation that plaintiff relied upon a contract of guaranty, the defendant was not called upon to and could not plead the statute of frauds, but had a right to avail himself of it under his general denial. (*Boston Dock Co.* v. *Dewea*, 6 Gray, 446; *Durant* v. *Rogers*, 71 Ill. 124; *Taylor* v. *Merrill*, 55 Ill. 52; *Hunter* v. *Randall*, 62 Me. 425; 16 Am. Rep. 490.) It it true that the record does not show that the evidence was objected to; nor would it do so, even if such were the fact. The appeal is by plaintiff, and the objections and exceptions of defendant have no place in the record. The presumptions are in favor of the rulings and findings of the court below, and we see nothing in the record to overcome such presumption.

These being the only points made upon the appeal, it follows that the judgment and order appealed from must be affirmed.

So ordered.

SHARPSTEIN, J., McFARLAND, J., THORNTON, J., and BEATTY, C. J., concurred.

WORKS, J., and PATERSON, J., dissented.