James G. Heggie and John Heggie, Partners, etc., v. Ezekiel Smith and Patrick J. Sexton.

1. COLLATERAL UNDERTAKINGS — *Statute of Frauds.*— An oral promise, by a managing partner in a firm of contractors, that if a sub-contractor did not pay for certain implements previously ordered by such sub-contractor, he, said managing partner, would, is a collateral promise within the statute of frauds, and not binding upon the firm of which such promisor was a member.

Assumpsit.—Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

GARNSEY & KNOX, attorneys for appellants.

HILL, HAVEN & HILL, attorneys for appellees.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

Appellants brought this suit in assumpsit against appellees, to recover the price of seventeen iron "skips," amounting to $1,020, which skips were manufactured by appellants and delivered to Dion Geraldine, who was a subcontractor under appellees on the sanitary drainage canal.

Appellants were boiler-makers in the city of Joliet, and manufactured the skips in question upon an order given to them by Geraldine. Thus far there is no dispute, but the claim of appellants is, that the skips were delivered for the use and benefit of appellees, to be used by the latter in their work upon the main channel of the sanitary district of Chicago, upon which they were contractors.

The declaration contained only the common counts, and the only plea upon which the case was tried was the general issue.

A jury was waived and the cause tried by the court. The court found in favor of the defendants, and after overruling a motion for a new trial rendered judgment against the plaintiffs for costs, and they prosecute this appeal.

It appears from the evidence that, in July, 1892, the McCormick Construction Company became contractors to perform certain work upon a part of the main channel of the sanitary district, known as section 14.

Appellee succeeded to the rights of the McCormick Co. in their contract to this work. Geraldine became a subcontractor under appellees, to take out of the channel certain rock after it had been blasted. To perform this work he required the use of what are termed "skips," which were fashioned like a large scraper, into which the stone, after being blasted, was thrown by hand, and then the skips and contents were lifted out upon the bank, and there the stone

was discharged. These skips cost about $60 each, and quite a number were required in order to do the work. Geraldine placed with appellant an order for ten skips, which were manufactured and delivered to him in August, 1894, and subsequently paid for by appellees in January or February, 1895.

In· September, 1894, Geraldine needed more skips, and placed an order with appellants for an additional twenty, which were manufactured and delivered in October. In November or December, 1894, Geraldine gave an order for another twenty skips, but as appellants had not then been paid for any of those theretofore furnished, they only delivered three on the last order. Before the other seventeen were delivered, appellants claim that Ezekiel Smith, the managing partner of appellees' firm, came to their works and represented that they were in desperate need of the skips, because they were not getting out the monthly requirements under their contract with the drainage district; that they must have the skips, and if Geraldine did not pay for them he would. Appellants then delivered the seventeen skips, being the remainder of the last order for twenty, the price being $60 each, or a total of $1,020.

The only question for determination by the court was, whether appellees made a promise to pay for the skips which was binding upon them as an original undertaking.

The alleged promise, which it is to be observed is absolutely denied by Mr. Smith, was not in writing, and if·only collateral to the liability of Geraldine, was void under the statute of frauds. Whether a promise is an original or collateral undertaking is frequently a question of great difficulty, but in the case at bar we think it is one of comparatively easy solution. The promise, as testified to by appellant, was, that if Geraldine did not pay for the skips, appellees would pay for them. The language standing alone imports simply a collateral undertaking; but further than this, the skips were charged to Geraldine upon the books of appellants; the bills were made out to him, and payment thereof was frequently demanded from him. There was, therefore,

a binding and subsisting obligation on the part of Geraldine to appellants, to which the promise of appellees, if made, was collateral. In other words, the party for whom the promise was made, was liable to the party to whom it was made. (Resseter v. Waterman, 151 Ill. 169–176, and cases cited.)

This seems to be one of the tests in determining· whether the undertaking is original or collateral only. Under the authorities we are clearly of the opinion the promise, if made as claimed, was collateral to the original obligation of Geraldine, and was not binding or enforcible unless made in writing. (Eddy et al. v. Roberts, 17 Ill. 436; Blank v. Dreher, 25 Ill. 331; Williams v. Corbet, 28 Ill. 262; Hughes v. Atkins, 41 Ill. 213.)

Many other cases might be cited in support of the view we take of the case, but these are abundantly sufficient.

It is assigned for error that the court refused to hold, as the law of the case, propositions numbered one, two and four, offered by appellants.

The first proposition asked the court to hold that when goods are sold to. one person on the verbal promise of a third party to pay for them, and such goods are charged to such person in an account against him,. the vendor may show, notwithstanding such charge on the books, that the goods were actually sold on the strength of the promise of such third party and that the vendor relied thereon.

As a bare proposition of law this may be correct, but we think it was not applicable to the facts as shown by the evidence. Appellants did not show, or offer to show, that there was any mistake in charging the skips to Geraldine. The undisputed facts are, that if appellants relied upon any promise of appellees in delivering the skips it was a promise to pay if Geraldine did not. Under the evidence we think there was no error in refusing the proposition.

The second proposition was too narrow in its scope, and sought to put the determination of the question as to whether or not the promise was within the statute of frauds, upon the sole purpose and object of the promisor in mak-

ing the promise. In this case it may be that appellees were interested in having Geraldine obtain the skips, so that his work might not be delayed under the sub-contract, but that fact alone would not make their promise an original undertaking, if in fact they only promised to pay if Geraldine did not.   There was no error in the refusal.

The fourth proposition really asked the court to pass on a question of fact, which it was not bound to do, and hence it was properly refused.

Finding no error in the record, the judgment will be affirmed.