# Illinois Surety Company, Appellee, v. Fayette S. Munro, Appellant.

## Gen. No. 23,228.

1. APPEAL AND ERROR, § 801*—*when pleading must be preserved in bill of exceptions.* After a pleading is stricken from the files it no longer remains a part of the record, and, to preserve for review the question of the correctness of the court's ruling in striking it from the files, the pleading itself must be preserved in the bill of exceptions, else it cannot be considered, even though it appears in the transcript as a part of the record.

2. MUNICIPAL COURT OF CHICAGO, § 29*—*what subject of review when no affidavit of merits on file.* Where a case has been heard without an affidavit of merits on file, the only question presented is whether or not the statement of claim states a good cause of action and whether or not such statement and the testimony submitted to sustain it will support the verdict and judgment entered by the trial court.

3. GUARANTY, § 1*—*when obligation to answer for debt of another is collateral.* The obligation of one to answer for the debt of another may be collateral, whether the debt of the other is existing, contemporaneous or subsequent with regard to the time the obligation is assumed.

4. GUARANTY, § 1*—*what is nature of contract of.* A contract of guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform.

5. INDEMNITY, § 1*—*what is nature of contract of.* A contract of indemnity involves an obligation or duty on the part of the person making it to make good any loss or damage another has incurred or may incur by acting at his request or for his benefit.

6. INDEMNITY, § 1*—*how contract of distinguished from contract of guaranty.* A contract of indemnity is distinguished from one of guaranty in that in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred or is about to incur to a third person, and is not, as in a contract of guaranty, a promise to one to whom another is answerable; the promise in an indemnity contract is an original and not a collateral undertaking.

7. GUARANTY, § 1*—*what is rule as to necessity of existing debt to which promise can be collateral.* The rule that before a promise

can be held collateral it must be shown that there is an existing debt of some other to which it can be collateral is not to be understood as requiring that such debt must be existing at the time the collateral promise is entered into, but as meaning that there must be an actual binding promise of some other person to the creditor, the time when the debt comes into existence being unimportant, provided it does come into existence.

8. GUARANTY, § 11*—*what is test on issue of original or collateral promise.* Where the issue involved is whether a promise is original or collateral, the question as to when the promise was made with reference to the incurring of the debt is not the test, but the test is whether the person sought to be charged was to be liable at all events or only in case the other failed to pay.

9. GUARANTY, § 11*—*when surety company deemed to have given credit to litigant.* A surety company which executes and files a bond for costs for a litigant from whom it demands and receives an obligation to reimburse it for all costs and expenses to which it may be put by reason of giving such bond, also requiring the litigant to give reasonable assurance, by giving references of his ability to perform such obligation, and which receives payment of the premium on the bond from the litigant, will be held to have given credit to the litigant and not to one who promised it to stand back of any obligation which the litigant might incur in such behalf.

10. GUARANTY, § 9*—*what controls in determining whether promise is contract of.* In determining whether a promise constitutes a contract of guaranty or a contract of indemnity, the intention of the parties controls.

11. GUARANTY, § 9*—*how language construed in determining whether promise intended is contract of.* In ascertaining whether a promise was intended as a contract of guaranty or as a contract of indemnity, great weight will be given to the language used in making the promise, and such language will be construed in accordance with the well-known and usual meaning of the words, unless there are facts and circumstances showing that such words were used in a different sense.

12. GUARANTY, § 1*—*when promise is collateral to original obligation.* A promise by one to a surety company that if the latter executes and files for a certain litigant its bond for costs in an action, such one "will stand back of any obligation" which the litigant "may incur in this behalf" is collateral to the original obligation.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

at the March term, 1917.   Reversed.   Opinion filed January 30, 1918.

BOWEN W. SCHUMACHER, for appellant.

HOPKINS & HOPKINS, for appellee; ALBERT J. HOPKINS and HASKELL C. DAVIS, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

This was an action brought by the Illinois Surety Company, appellee, hereinafter referred to as the plaintiff, against Fayette S. Munro, appellant, hereinafter referred to as the defendant, in which there was a verdict for the plaintiff for the sum of $1,511.37, on which the trial court entered a judgment, from which the defendant has appealed.

So far as it is necessary to state them for the purposes of this opinion, the facts are as follows: The defendant is an attorney of the firm of Vroman, Munro & Vroman. He represented a Mr. Rice in some litigation in the State of Wyoming in which it was necessary for the latter to file a bond for costs. The defendant wrote a letter to the plaintiff in the following words:

"Chicago, November 22, 1911.
"Mr. Schick, Secy.,
     Illinois Surety Co.,
          Chicago.
"Dear Sir:
     This will introduce Mr. Edward F. Rice, who desires to get a cost bond in the Federal Court, and this firm will stand back of any obligation which Mr. Rice may incur in this behalf.
                    Very truly yours,
"F. S. M.               VROMAN, MUNRO & VROMAN."

The defendant gave this letter to Mr. Rice and the latter presented it to the plaintiff at the time he applied

to it for the needed bond. Before executing this bond, the plaintiff required Mr. Rice to execute its usual form of application, in which he made answer to a number of questions, among others, one inquiring as to the extent of his real and personal property and another requesting him to give the names and addresses of several references. This application executed by Mr. Rice amounted to a contract of indemnity on his part, for, in it, he not only covenanted and promised to pay the premium on the bond, but to reimburse plaintiff for any amounts of any kind or nature it might be required to pay out as a result of executing the bond.

Pursuant to the application, plaintiff filed its bond for costs in the Circuit Court of the United States for the District of Wyoming in the suit wherein Rice was the plaintiff. The bond filed by the plaintiff covered not only the court costs but all the costs that might accrue to any of the officers of the court. Some time later, Rice having died, the court of Wyoming entered a decree reciting his death and also reciting that certain receiver's and other fees were due and unpaid and that there were no assets in the hands of the receiver out of which they could be paid, and directing the Illinois Surety Company to pay such costs. The decree further proceeded to dismiss the suit. Under that decree, the plaintiff paid the sum of $1,165.14, and in addition spent the sum of $19.50 in expenses and $150 in attorney's fees in an attempt to have the costs retaxed in the Wyoming court.

The defendant here filed his affidavit of merits which, on motion of the plaintiff, was stricken from the files as were certain amended and additional affidavits of merits which were later filed, following which the court heard certain testimony presented by the plaintiff and also the defendant, after which the court instructed the jury to find the issues for the plaintiff and assess the plaintiff's damages at the sum

of $1,165.14 with interest thereon at the rate of 5 per cent. from May 28, 1913, and in addition thereto such further sum as the jury might believe to be reasonable fees and expenses expended by the plaintiff, not exceeding, however, the amount of $169.59 which the evidence showed the plaintiff had actually paid out for that purpose.

It is urged by the defendant that the judgment of the trial court should be reversed by reason of the fact that the court erred in striking from the files his last affidavit of merits filed July 15, 1915. Although the bill of exceptions which is contained in the record of this case includes the order of the trial court complained of, and its decision to the effect that the order was entered pursuant to the court's ruling that the affidavit of merits was clearly unfounded in law, the bill of exceptions does not include the affidavit of merits which the court struck from the files. After a pleading is stricken from the files, it no longer remains a part of the record, and, in order to preserve for review the question of the correctness of the ruling of the court in striking the pleading from the files, the pleading itself must be preserved in the bill of exceptions. Not being so preserved, it cannot be considered though it may appear in the transcript as a part of the record. *Barger v. Hobbs,* 67 Ill. 592, 597; *Mann v. Brown,* 263 Ill. 394; *Harmon v. Callahan,* 207 Ill. App. 506; *Witteman Co. v. Goeke,* 200 Ill. App. 108; *American Lumber Co. v. Leach,* 207 Ill. App. 62.

The case having been heard without an affidavit of merits on file, the only question presented is whether or not the second amended statement of claim of the plaintiff, on which the testimony was heard and the judgment entered, states a good cause of action, and whether or not the second amended statement of claim and the testimony submitted to the court in support of it will support the verdict and the judgment entered by the trial court.

The defendant urges that the judgment should be reversed by reason of the fact that the contract of the defendant with the plaintiff, as set forth in defendant's letter of November 22nd, is a contract of guaranty and a collateral undertaking, guaranteeing the obligation of Mr. Rice, and that the plaintiff cannot recover in that they have failed either to allege or to prove that Mr. Rice has made any default in his contract with the plaintiff, and have failed to make any showing of due diligence to recover their loss from the one primarily liable, or from his estate.

The plaintiff contends, on the other hand, that the judgment should be affirmed by reason of the fact that the contract of the defendant, as set forth in his letter, is not a contract of guaranty but one of indemnity, wherein the defendant is primarily liable and agrees to reimburse the plaintiff the moment the latter is required to pay out anything by reason of its obligation entered into in filing its bond for costs in the federal court.

It thus becomes necessary to determine just what the contract of the defendant is, as set forth in his letter of November 22nd. In support of its position the plaintiff contends that the defendant's agreement is an original obligation on his part and not a collateral one, by reason of the fact that at the time defendant entered into the obligation Rice was in no way indebted to the plaintiff; that, in order to make an obligation collateral, there must be in existence, at the time the obligation is entered into, a debt of another to which the obligation may be collateral, but wherever an agreement is made, guaranteeing a debt of another which is to be entered into in the future, the obligation is an original one and not collateral.

This is not a correct statement of the law. The obligation of one to answer for the debt of another may be collateral whether the debt of the other is present, or prospective at the time the obligation is entered

into. 20 Cyc. 1397. A promise may be collateral whether made before or after or contemporaneously with the promise of the original debtor. 20 Cyc. 163.

A contract of guaranty is a collateral undertaking by one person to be answerable for the payment of some debt or the performance of some duty or contract for another person who stands first bound to pay or perform. 20 Cyc. 1397. A contract of indemnity involves an obligation or duty on the part of the person making it to make good any loss or damage another has incurred or may incur by acting at his request or for his benefit. Contracts of indemnity are distinguished from those of guaranty in that in indemnity contracts the engagement is to make good and save another from loss upon some obligation which he has incurred or is about to incur to a third person, and is not, as in guaranty, a promise to one to whom another is answerable. The promise in an indemnity contract is an original and not a collateral undertaking. 22 Cyc. 79-80.

In support of its contention, plaintiff cites the case of *Lusk v. Throop,* 189 Ill. 127, but it is not in point. There was a conflict in the evidence in the trial court in that case, with reference to the form of the promise made by the defendant, some witnesses giving testimony to the effect that the defendant had told the plaintiff that if he would deliver certain goods to a third party the defendant would pay for them, and other witnesses testifying that what the defendant had said was to the effect that if the third party did not pay for them, he, the defendant, would. There was thus presented to the jury an issue of fact as to whether the language used by the defendant was such as to make him primarily liable or such as to make him only secondarily liable. The jury found for the plaintiff on this issue of fact and this finding of the jury was reviewed in the Appellate Court where the judgment was affirmed. In the Supreme Court it was

held that the affirmance of the judgment in the Appellate Court conclusively determined this question of fact, and, it thus having been found that the promise made by the defendant was one which made him primarily liable, it was not within the Statute of Frauds —contrary to the contention which the defendant had urged to the effect that it was a collateral promise and being oral was void. In the case at bar no such issue of fact is raised as the promise is in writing, and its terms are not disputed.

The rule to the effect that before a promise can be held to be collateral it must be shown that there is an existing debt of some other person to which the promise can be collateral is a correct rule but should not be understood as meaning that the debt of the other person must be in existence *at the time the collateral promise is entered into* but as meaning that there must be an actual binding promise of some other person to the creditor, for, without such original obligation, the promise cannot be collateral. The question of *when* the *debt* of the other comes into existence is not important, just so long as it *does* come into existence. As stated in *Hargreaves v. Parsons,* 13 M. & W. 561, a promise is collateral when "made to the person to whom another *is already or is to become answerable.* It must be a promise to be answerable for the debt of, or default in some duty by, another person towards the promisee." To the same effect is *Mallory v. Gillette,* 21 N. Y. 414, where it is held that "original and collateral obligations may come into existence at the same time and both be the foundation of credit, or one may exist and the other be created afterwards; in either case, and equally in both, the inquiry under that statute (of Frauds) is whether there be a debtor and a surety and not *when* was the relation created."

The confusion about the interpretation and application of this rule seems to have had its beginning with a ruling by Lord Mansfield in the case of *Maubrey v.*

*Cunningham,* in 1773, in which he held that as the promise involved was before the delivery of the goods, it was an original promise and not within the Statute of Frauds, because, at the time of the promise, there was no debt to which it could be collateral. The words making up the promise in that case seem to be substantially a request to deliver goods to another and ''I will see them paid for.'' The following year, the case of *Jones v. Cooper,* 1 Cowp. 227, arose, and, in that case also, the promise involved was before the delivery of the goods but was a promise to pay for them in case the other did not pay, and in that case Lord Mansfield held it was a collateral undertaking and within the Statute of Frauds. In the case of *Peckham v. Faria,* 26 E. C. L. 21; 3 Dougl. 13, which arose in 1781, and which was also decided by Lord Mansfield, we find him using this language: ''Before the case of *Jones v. Cooper,* I thought there was a solid distinction between an undertaking after credit given and an original undertaking to pay, and that, in the latter case, the surety being the object of the confidence was not within the statute, but, in *Jones v. Cooper,* the court was of the opinion that wherever a man is to be called upon only in the second instance he is within the statute; otherwise, where he is to be called upon in the first instance, not within it.'' In that case the defendant had told the plaintiff that he might deliver goods to a third person in the future and ''I will pay you if he does not,'' and the court held that the promise was collateral.

It is now well settled not only in England, but in this country as well, that a promise to pay the debt of another may be collateral although at the time the promise is made the debt to which it becomes collateral may not have been incurred. *Jones v. Cooper,* 1 Cowp. 227; *Peckham v. Faria,* 26 E. C. L. 21; 3 Dougl. 13; *Cahill v. Bigelow,* 18 Pick. (Mass.) 369 (overruling the earlier case of *Perley v. Spring,* 12 Mass. 297, cited by

plaintiff); *Cole v. Hutchinson,* 34 Minn. 410; *Mead, Mason & Co. v. Watson,* 57 Vt. 426; *Stone v. Walker,* 13 Gray (Mass.) 613; *Blank v. Dreher,* 25 Ill. 331; *Taussig v. Reid,* 145 Ill. 488; *Heggie v. Smith,* 87 Ill. App. 141; *Smith v. Bainbridge,* 6 Blackf. (Ind.) 12; *Babcock v. Bryant,* 12 Pick. (Mass.) 133; *Tileston v. Nettleton,* 6 Pick. (Mass.) 509.

Many of the cases cited by the plaintiff in support of its position are cases involving contracts of indemnity as distinguished from contracts of guaranty and therefore are not in point; and, in others, the language used by the promisor is clearly to be distinguished from the language involved in the case at bar.

Where the issue involved is whether the promise is original or collateral, the question of when the promise was made with reference to the delivery of the goods, or the performance of the service, is never the test, but the true test is whether the credit is given to the promisor, the person sought to be charged, or to the third person to whom the goods are delivered or for whom the service is performed, the person sought to be charged only guaranteeing that the person to whom the credit is given would pay the debt. Or, stated in another way, the test is whether the person sought to be charged was to be liable at all events or only in case the other failed to pay. *Geary v. O'Neil,* 73 Ill. 593; *Cole v. Hutchinson,* 34 Minn. 410; 3 Kent Com. 123, and cases cited.

It seems clear that in the case at bar the plaintiff in executing its bond and filing it in the United States Court did not give credit to the person here sought to be charged, namely, the defendant, but to Rice. This is indicated by the fact that it took Rice's obligation to reimburse the plaintiff for all costs and expenses to which it might be put by reason of the execution and filing of its bond, and to give the plaintiff reasonable assurance that Rice could perform his obligation they required him to give references. It appears from

the record that Rice and not the defendant paid the premium on the bond.

The question that controls is, What was the intention of the parties in making and in receiving the promise in question? Did the promisor (the defendant) intend to make an original promise, and, when the promise was made did the promisee (the plaintiff) consider that the promisor was becoming primarily liable? On the question of the intention of the parties, the form of expression employed in making the promise is entitled to and should receive great weight. The language employed will be construed in accordance with the well-known and usual meaning of the words used in order to arrive at the intention of the parties unless there are facts and circumstances of the transaction clearly showing that the parties, in making use of the form of promise they did, used it in a sense different from that in which it is commonly used. 15 L. R. A. (N. S.) 214-227, note. In the case at bar, the defendant did not promise to indemnify the plaintiff against any damages which it might sustain by reason of executing the bond which Mr. Rice wanted, nor did he promise to see the plaintiff harmless should the latter become surety for Mr. Rice. What he did do was to promise the plaintiff that if the latter executed and filed its bond as requested by Mr. Rice, he *"would stand back of any obligation which Mr. Rice might incur in this behalf."* The use of that language indicates what the intention of the defendant was so clearly as to make it impossible to escape it. The promise says in so many words that it is contemplated that there is to be *an obligation on the part of Mr. Rice* and that the defendant promises to *stand back of that obligation,* or, in other words, that it is the intention of the promisor to make a promise which shall be collateral to the obligation of Mr. Rice. It seems to us that the intention of the plaintiff with reference to the making of this promise is as clearly indicated by the

facts disclosed by the record in this case as the intention of the defendant. That it was the intention of the plaintiff that Mr. Rice was primarily liable; and that the defendant's promise was collateral to the original obligation of Mr. Rice is established by the fact that the plaintiff carefully inquired as to the financial ability of Mr. Rice and took his original obligation to reimburse it against any loss by reason of issuing the bond and further by the fact that they received payment of the premium on the bond from Mr. Rice.

A case in which the words used by the promisor were very similar to the words used by the defendant here is the case of *Billingsley v. Dempewolf*, 11 Ind. 414, where A loaned his horse to B under promise by C that "any agreement you and B make about the horse I will make good." B failed to return the horse and A sued C for its value, and the court held that the promise involved was collateral. The court said that it was a question for the trial court, sitting as a jury, to determine whether the credit was given to the person to whom the horse was given or to the defendant, and that the finding of the trial court to the effect that the credit had been given by the plaintiff to the one who had received the horse would not be disturbed and the court adds: "We think, also, that a proper construction of the terms of the promise is that it was a collateral undertaking."

The plaintiff brought his suit against the defendant on the theory that the contract entered into by him was a primary obligation, and the amended statement of claim on which the judgment was entered in the trial court alleges the contract to be one of indemnity. That was the theory on which the plaintiff tried his case and upon which the court entered its judgment.

As we are of the opinion that the defendant's liability under this contract, if any, is a secondary one, the judgment of the Municipal Court must be reversed.

*Reversed.*