M. E. S. Lee v. R. S. Newman et al.

55 365
c73 675
55 365
84 238

1. Deed. *Recitals conclusive. How reformed.*
   In a suit by the beneficiary to enforce a trust created by deed, the grantee, claiming title and holding the land under the deed, cannot contradict the recitals thereof without having first filed his bill or cross-bill to reform it. Such recitals can be altered only by a direct proceeding for that purpose.

2. Statute of Frauds. *Agreement to pay to creditor of promisee.*
   Where a vendee of land agrees to pay a part of the purchase-money to a creditor of the vendor, the agreement is, not to pay the debt of another, but to pay his own debt to some person other than his own creditor. And the facts that the payment is to be made to a third person, that in paying his own debt he extinguishes that of another, and that the liability of that other continues the same after as before his undertaking, do not bring the agreement within the statute of frauds.

3. Trusts. *Charge on land in favor of grantor's creditor. May be enforced by beneficiary.*
   J. M.N., to secure a debt to L., gave a deed in trust on certain town lots, which he afterwards sold, together with some other lots, to R. S. N., for a consideration of $8,000, recited as follows: ·"The sum of $5,024.72 in cash, paid by the party of the second part (the grantee) to the party of the first part (the grantor), and the further sum of $2,975.28 assumed to be paid to L. in satisfaction of a deed in trust for the last-mentioned sum, which said deed is a lien and incumbrance upon the property hereinafter conveyed." R. S. N. having failed to pay off the debt to L., the latter caused those lots covered by his deed in trust to be sold thereunder, and, they not being sufficient to pay the debt, he then filed a bill to subject the other lots conveyed to R. S. N., and not covered by the deed in trust, to the payment of the balance due. The bill was resisted upon the ground that L. had no claim upon any of the lots not embraced in his deed in trust, and that, being no party to the conveyance from J. M.N. to R. S. N., he acquired no rights by the recitals thereof, and could maintain no suit thereon. *Held,* that, by reason of the assumption recited in the conveyance, R. S. N. took the land charged with a trust for the benefit of L., and a court of equity will enforce the same at his suit, as against R. S. N. and all parties deriving title through him, the conveyance showing upon its face that a part of the purchase-money was unpaid, and was to be paid to L.

Appeal from the Chancery Court of Pike County.

Hon. E. G. Peyton, Chancellor.

The case is stated in the opinion of the court.

*Cassedy & Stockdale,* for the appellant.

1. The parol evidence of R. S. Newman cannot avail him to contradict the consideration recited in the deed, nor to set up

a different contract than that recited in the deed. *Hughes* v. *Daniel*, Walk. 488 ; *Young* v. *Jocoway*, 9 Smed. & M. 212 ; *Bradly* v. *Carter*, 4 Cushm. 282 ; *Ellis* v. *Kelly*, 4 Geo. 685 ; *Herndon* v. *Herndon*, 41 Miss. 584 ; *Kerr* v. *Kuykendall*, 44 Miss. 137. Although Newman states in his answer that the recital in the deed, as to the consideration thereof, was made by mistake of the draftsman, yet he does not seek to reform the deed. The rule in such a case is that the deed must have its legal effect as written, and is the exclusive evidence between the parties. *Eskridge* v. *Eskridge*, 51 Miss. 522. The grantee in the deed, and all persons holding under him, are bound by its recitals. *Robbins* v. *McMillan*, 26 Miss. 438.

2. An implied trust arises out of the deed in this case, of which J. M. Newman is the grantor, R. S. Newman the trustee, M. E. S. Lee the beneficiary, and the land described in the deed is the fund. Lewin on Tr. 140, note 1. J. M. Newman, having a debt due him from R. S. Newman, on a legal consideration, by this deed assigned it to Lee. This in equity amounts to an assignment of the debt to Lee, and it will be enforced in equity. A trust is thus created in favor of Lee, as the equitable assignee of the fund, and constitutes an equitable lien upon it. 2 Story's Eq. Jur., secs. 973, 1044 ; Perry on Tr., sec. 585 ; *Lucas* v. *Lockhart*, 10 Smed. & M. 466 ; *Norman* v. *Burnet*, 3 Cushm. 183.

3. The words on the face of the deed from J. M. Newman to R. S. Newman carry a plain and unequivocal meaning, which gives a lien on the trust conveyed for the security of the purchase-money to be paid to Lee. In legal effect the deed has the same import as though it reserved a lien in the face of the deed, which it does for the security of the purchase-money, and R. S. Newman had given his promissory note to J. W. Newman for the amount stated, which the latter assigned and transferred to Lee. The deed, in expressing the amount assumed to be paid by R. S. Newman to Lee, refers only to the trust deed to identify the debt, the assumed pay-

ment of which by R. S. Newman constitutes the consideration of the conveyance, and is a "lien and incumbrance on the property, hereinafter conveyed." J. W. Newman, as between himself and R. S. Newman, had a lien on the land for the unpaid purchase-money, but the express reservation of the lien on the face of the deed created an equitable mortgage, which passed with the assignment of the purchase-money to Lee. *Stratton* v. *Gold*, 40 Miss. 778; *Harvey* v. *Kelly*, 41 Miss. 490. This can be as readily enforced in equity as any other equitable mortgage.

4. But without this express lien in the face of the deed, amounting to an equitable mortgage, if the facts disclose, as they clearly do in this case, that the land was conveyed by John M. Newman, as a means of applying the purchase-money, through the purchaser, to the payment of Lee's debt, equity lays hold of the conscience of R. S. Newman and creates a lien as against him and third persons who are either volunteers or have notice of such equity. Story's Eq. Jur., sec. 1231; *Thompson* v. *Wheatly*, 6 Smed. & M. 499. The doctrine extends to a purchaser of property charged with the payment of a specific debt, and before he can hold such property exempt from the trust he must see that the purchase-money is applied to the payment of the specific debt. Story's Eq. Jur., sec. 1127, and note 1; *Murry* v. *Ballon*, 1 Johns. Ch. 556. On this ground proceeds the doctrine of trusts *in invitum* and constructive frauds. Where a party purchases trust property, knowing it to be such, violating the object of the trust, courts of equity force the trust upon the conscience of the guilty party, and compel him to perform it, and to hold the property subject to it, in the same manner as the trustee himself held it. 1 Story Eq. Jur., secs. 395–397.

5. Garner & Tennison purchased property held by R. S. Newman under the deed from J. M. Newman, after the deed had been recorded, and before Lee's debt had been paid. That deed recited the trust charged on the land, and they are chargeable with notice of the contents of the deed. 1 Story's

Eq. Jur., sec. 400 ; *Gordon* v. *Sizer*, 10 Geo. 805 ; *Martin* v. *Nash*, 2 Geo. 324.

*Sessions & Cassedy*, for Newman, one of the appellees.

The language of the deed is to be closely considered ; for, unless the intention clearly appear to charge the estate con-veyed to R. S. Newman with a lien, the court will not presume that it existed. Lee held an old deed in trust on a com-paratively small part of the lots conveyed, and the grantor conveyed subject to this lien of Lee's. Nothing more was intended, as expressed in the deed. No ingenuity can distort or alter the manifest intention gathered from the writing. In cases of implied trusts, the intention to create the trust must clearly appear ; a strained construction will not do.

The deed in trust to Lee existed in May, 1868 ; the deed from J. M. Newman to R. S. Newman was made in October, 1869, over a year afterwards. The record nowhere discloses that it was ever J. M. Newman's intention to give other security than that given at first. There is nothing to show that Lee ever had any right to expect it, or that he did expect it. Lee's own testimony goes no further than the assertion that J. M. Newman spoke of settling the debt by absolute conveyance of lots. The testimony of R. S. Newman shows that it was never intended or contemplated by the parties to the deed that a lien should exist on any other part of the property than that already included in Lee's deed in trust. In fact, he shows that all of the money was paid to J. M. Newman, except $600, which was afterwards paid to Lee by special agreement between the Newmans, father and son.

*D. W. Hurst*, for Garner & Tennison, appellees.

The lot claimed by Garner & Tennison is not mentioned in the deed in trust from J. M. Newman to Whitney, as trustee for Lee, and the ground upon which Lee predicates his claim to this lot is the following language in the deed from J. M. Newman to R. S. Newman, in reference to the consideration thereof : " Two thousand nine hundred and seventy-five dol-lars and twenty-eight cents assumed to be paid to M. E. S.

Lee, in satisfaction of a deed in trust for the last-mentioned sum, which said deed is a lien and incumbrance on the property hereinafter conveyed." This language of the grantor cannot be construed to mean any other lien than that which is created by the trust deed of J. M. Newman to Whitney, as trustee for Lee. And more especially should that construction be given to it when the rights of purchasers for value and in good faith are involved. Garner & Tennison, in their answer, deny that they had actual notice of the deed in trust from J. M. Newman to Whitney, as trustee for Lee, or of the deed from J. M. to R. S. Newman, and state that they had no notice except such as is implied from the registration of the deeds mentioned. There is no case which goes to the length of saying that the failure of the utmost circumspection shall have the same effect of postponing a party as if he were guilty of fraud or willful neglect, or had positive notice. And although a mistake of law upon the construction of a deed or a contract will not alone discharge the purchaser from the legal effect of notice of such deed or contract, yet there may be a case of such doubtful equity, under the circumstances, that it ought not be enforced against such purchaser. 1 Story's Eq. Jur., ed. 1866, sec. 400, and cases there cited.

CHALMERS, J., delivered the opinion of the court.

M. E. S. Lee loaned to the firm of Enos & Co., of which John M. Newman was a member, the sum of $2,000 in gold, taking a note therefor signed severally by each member of the firm, and receiving at the same time, for the protection of the note, a deed of trust executed by John M. Newman on certain lots in the town of Summit. Eighteen months afterwards Newman sold these lots, with certain others, to his son, R. S. Newman, for the sum of $8,000. The consideration is thus recited in the deed from the father to the son: "That said party of the first part (the grantor), for and in consideration of the sum of eight thousand dollars, paid and assumed to be

paid as follows; that is to say, the sum of five thousand and twenty-four dollars and seventy-two cents in cash, paid by the party of the second part (the grantee) to the party of the first part, and the further sum of two thousand nine hundred and seventy-five dollars and twenty-eight cents assumed to be paid to M. E. S. Lee in satisfaction of a deed of, trust for the last-mentioned sum, which said deed is a lien and incumbrance upon the property hereinafter conveyed.''

The sum of $2,975.28, thus assumed to be paid by the grantee to Lee, was the amount due on the note held by the latter, allowing for the accumulated interest and the premium on gold; but the trust deed to secure it was a lien only on a portion of the lots conveyed to the son, and not upon all of them, as stated in the conveyance. Shortly after this conveyance the son sold one of the lots to —— Bunch, and paid over the whole proceeds, by direction of his father, to Lee, though the trust deed held by the latter covered only a half-interest in this particular lot. Twelve months afterwards John M. Newman removed to the state of Texas, carrying with him a large property, and has since died there. No further payments having been made by R. S. Newman to Lee, the latter foreclosed his trust deed by a sale of the lots embraced in it, credited the amount realized on his note, and now brings this bill against R. S. Newman to subject the other lots purchased by him and not embraced in the trust deed. He joins as defendants Garner & Tennison, to whom R. S. Newman had conveyed one of the lots purchased by him, which was not embraced in the trust deed, praying that if the lots remaining in the possession of Newman prove insufficient to liquidate his demand, this lot also may be subjected.

The defendants resist the relief prayed, upon the ground that the complainant has no claim upon any of the lots not covered by his mortgage; that he acquired no rights by virtue of the false recital in the conveyance from John M. to R. S. Newman; and that, being no party to said instrument, nor to any of the assumptions evidenced by it, he can maintain no suit

thereon.   R. S. Newman sets up further, by his answer and in his deposition, that in point of fact he never assumed to pay anything to the complainant, nor was he required or desired so to do by his father, the recital to that effect in the conveyance being a mistake of the scrivener, and the truth being that he paid to his father in cash the whole purchase price of the lots, save about $800, which he shortly afterwards paid to the complainant out of the proceeds of the sale of the lot to Bunch, as had been agreed between himself and his father.   With regard to the question of fact thus raised, we think it incompetent for R. S. Newman to contradict the recitals of the instrument under which he holds the property, without having filed a bill or cross-bill to reform it.   If those recitals impose a valid obligation upon him, they evidence the contract, and cannot be altered without a direct proceeding for that purpose. *Eskridge* v. *Eskridge*, 51 Miss. 522.   The story told by him, of the manner in which he procured and paid the money to his father, strikes us as in the highest degree improbable, and certainly lacks the confirmation of the witnesses by whom, if true, it could have been corroborated.

Addressing ourselves to a consideration of the questions whether any legal liability to pay the debt of the complainant was devolved upon R. S. Newman, or upon the land purchased by him, and, if so, whether complainant can assert it, it will facilitate our investigation to consider, first, the obligation of the vendee to his vendor, arising out of the conveyance.   If this were a bill filed by John M. Newman to recover the balance of the purchase-money represented by the debt due the complainant, he would be able to obtain no decree *in personam* against R. S. Newman, because our construction of that clause of the statute of frauds which requires all contracts in reference to lands to be in writing is that it applies always in behalf of the party defendant to the suit, so that, if it is a proceeding by the vendee to compel the making of a deed, he must be able to exhibit some writing signed by the vendor; and, if it is a suit by the vendor to recover the purchase-money, he must

show some written obligation to pay, signed by the vendee.
*Marqueze* v. *Caldwell*, 48 Miss. 23.

But while no recovery *in personam* could be had against the
vendee in this case, because of his failure to sign a written ob-
ligation to pay, yet, having gone into possession under a con-
veyance stating the price, which is declared to be a lien on the
land, and that the purchaser had assumed to pay it, by his
acceptance of the conveyance he has assented to the terms,
and cannot successfully resist the subjection of the land to the
burden thus imposed upon it.

The deed recites that the property is incumbered with a lien
to Lee for $2,975, which the vendee has assumed to pay, and
credit for which he has received in the cash payment made to
the vendor. Certainly, as against the vendor, he could not
escape payment of this portion of the purchase-money by
showing that, in point of fact, there was no such incumbrance.
This is a matter in which he has no concern. Having agreed
to pay $8,000 as the purchase price, he must pay it, or surren-
der the land. The authorities, indeed, go much further than
this, and hold that where the vendee has gone in under a con-
veyance reciting a previous mortgage to other persons, and has
received credit in his purchase for the amount of said mort-
gage, he will not be allowed, in a foreclosure suit brought by
the mortgagees, to question the validity of the mortgage, even
though it be absolutely void. *Sands* v. *Church*, 6 N. Y. 347;
*Murray* v. *Judson*, 9 N. Y. 170; *Hartley* v. *Harrison*, 24 N.
Y. 170.

So, also, where the previous mortgage is nominally for a
much larger amount than is really due, but the vendee obtains
credit for the nominal sum, he will not be allowed to pay to
the mortgagees the real amount due, but must pay to them
the full sum expressed, and leave them to settle for the excess
with his vendor; and the principle will apply to all successive
purchasers. *Freeman* v. *Auld*, 44 N. Y. 50.

The obvious principle of these decisions is that the vendor
has the right to impose upon the sale of his property such

conditions as he chooses, and when these are plainly expressed
in the conveyance, the vendee who enters under it takes the
property *cum onere*, and must discharge the burden.   Nor is
an obligation to pay the debts of the vendor to a third person,
though in parol, obnoxious to that provision of the statute of
frauds which requires all undertakings to pay the debts of
another to be in writing.

Such assumptions are not within the statute.   The contract
is, not to pay the debts of another, but to pay the party's own
debt to some person other than his own creditor.   " It may
be stated as a general rule that wherever the main purpose
and object of the promisor is, not to answer for another, but
to subserve some purpose of his own, his promise is not within
the statute, although it may be in form a promise to pay the
debt of another, and although the performance of it may inci-
dentally have the effect of extinguishing the liability of an-
other."   3 Pars. on Con., 5th ed., 24.

The statute of frauds was intended to protect from the en-
forcement of parol contracts to be answerable for the liabili-
ties of others, but not to shield a party from the performance
of his own contracts, though the effect of such performance
would liquidate also the liabilities of another.   Nor will it
make any difference that the liability of the original debtor
continues after the assumption by the new one.   The contract
not being within the statute, this cardinal test of whether it is
a collateral or an original undertaking (see *Sweatman* v.
*Parker*, 49 Miss. 19, and *Bloom* v. *McGrath* et al., 53 Miss.
249) does not apply.   It is not the debt of another, but his
own debt, which he has promised to pay, and neither the fact
that the payment is to be made to a third person, nor the fact
that in paying his own debt he extinguishes that of another,
nor the fact that the liability of that other continues the same
after as before his undertaking, brings it within the statute.

It is usually said that " if the consideration of the new
promise springs out of any new transaction, or moves to the
party promising upon some fresh and substantive ground of

personal concern to himself, the statute of frauds does not attach." Mr. Browne, in his work on the Statute of Frauds, considers that a safer method of stating the rule would be to say that wherever "the primary and distinctive obligation assumed by the defendant is different from that of a guarantor, although as incidental to, and in the discharge of, that obligation the debt of another was satisfied, the defendant's promise is not within the statute." Browne on Stat. Fr., sec. 212 and notes, sec. 166 and cases cited.

It is manifest, from a consideration of these principles, that against a bill filed by John M. Newman to subject the land sold to the payment of so much of the purchase-money as was represented by his own note to Lee, no valid defense could be interposed by his vendee. It is equally manifest that Garner & Tennison, the sub-vendees of R. S. Newman, are bound by the equitable lien of the vendor for this sum, since the deed to their vendor, through which their own title was derived, showed it to be unpaid. *Taylor* v. *Deason*, 53 Miss. 697.

Can the complainant assert, on his own behalf, this undertaking exacted by the vendor from the vendee for his benefit? It has been held from very early times, though not always without question, that where a contract not under seal is made with A to pay B a sum of money, B may maintain an action in his own name; and in America it has been held that such promise is to be deemed made to the third party, if adopted by him, though he was not cognizant of it when made. In law the promise is held to be made to him to whose benefit it inures, and in pleading, it is always sufficient to declare according to the legal effect. The rule is different where the promise is under seal, because there the action must be debt or covenant; and, hence, must be in the name of the obligee.

Especially will this right to bring suit in his own name exist, in behalf of him for whose benefit the promise was made, where the consideration of it was money or property simultaneously delivered or sold to the promisor. In such case the

property is received under a trust, which will itself form a good consideration, inuring to the benefit of him to whom the payment is due; and, if the purchaser has received credit for the sum thus contracted to be paid to such other person, the law will treat it as money had and received to his use. 1 Chitty's Pl. 5; *Arnold* v. *Lyman*, 17 Mass. 400; *Hull* v. *Marston*, 17 Mass. 579; 1 Cranch (App.), 429; *Burker* v. *Bucklin*, 2 Denio, 45; *Hendricks* v. *Lindsay*, 93 U. S. 143; *Lawrence* v. *Fox*, 20 N. Y. 268; 1 Pars. on Con., 5th ed., 466-468.

In *Dearborn* v. *Parks*, 5 Greenl. 81, and in *Whitbeck* v. *Whitbeck*, 9 Cow. 266, the exact question here involved was presented. The purchasers of real estate had assumed (in one case in writing, and in the other by parol) to pay a portion of the purchase-money to creditors of the vendor. Though these creditors were not parties to the contract, it was held that they could recover the amounts so promised to be paid them, by direct action in their own names. A personal recovery in such a case would not be permissible, as before remarked, under the construction of the statute of frauds announced in *Marqueze* v. *Caldwell*, *supra*, but, as we have seen, the vendor could assert his lien against the land. There can be no good reason for denying the same remedy to him for whose benefit the assumption was made. By reason of the assumption the purchaser has obtained a diminution in the amount paid to the vendor, and has taken the land charged with an equity in favor of a third person. A court of equity, in analogy to that principle which in a court of law would enable such third person to maintain an action of *assumpsit*, if there was a personal liability incurred by the vendee, will permit him to assert against the land that trust which was fastened on it for his benefit; and this he can do both against the vendee and against all deriving title through the conveyance, which gave notice upon its face that the purchase-money was unpaid, and was to be paid to him.

We would remark that, though Garner & Tennison deny

actual knowledge of the complainant's equity, there is evidence tending strongly to show that they were aware of it, and anticipated that the land might be made answerable. They had constructive notice by the record of the deed.

Decree reversed and cause remanded for entry of decree in accordance with the principles here announced.