# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00258-COA

**TURNER & ASSOCIATES P.L.L.C., THE ESTATE OF BENNIE L. TURNER, AND ANGELA TURNER**                                       APPELLANTS

**v.**

**THE ESTATE OF GERALD WATKINS, DECEASED, BY AND THROUGH CYNDEE IMMON SIMMONS WATKINS, ADMINISTRATRIX**                    APPELLEE

DATE OF JUDGMENT:                07/20/2020
TRIAL JUDGE:                     HON. JOHN R. WHITE
COURT FROM WHICH APPEALED:       PONTOTOC COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:         ANGELA TURNER FORD
ATTORNEYS FOR APPELLEE:          J. RHEA TANNEHILL JR.
                                 JACOB BYSTROM JORDAN
NATURE OF THE CASE:              CIVIL - LEGAL MALPRACTICE
DISPOSITION:                     AFFIRMED - 08/23/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     While working on a house, a man fell off the roof and was injured. He hired a law firm to sue the homeowner and insurance company. Eight years later, he discovered the law firm never filed his lawsuit, and the statute of limitations on the suit had long since expired. The parties agreed to a settlement for $300,000. The law firm tendered $18,000; when the rest was not forthcoming, the man sued. After protracted litigation, the trial court entered an order that enforced the settlement release and held that the law firm still owed the man

money. The law firm appealed.

## FACTS

¶2.  In December 2002, Gerald Watkins was working to repair the roof of a local home. He fell off the roof and was injured. In 2004, he hired Turner & Associates P.L.L.C. to file a personal injury lawsuit against the homeowner and its insurance company.

¶3.  Turner & Associates told its client a lawsuit was filed on his behalf. The law firm also told Watkins a trial date was set. The law firm even told him he could receive a settlement as high as half a million dollars or more.

¶4.  But in 2012, Watkins discovered the law firm had never filed a lawsuit for him. The statute of limitations on Watkins' claims had expired in 2005—seven years earlier. In fact, it appeared as if Watkins had only been communicating with Carolyn Turner Karriem, a non-lawyer employee of the law firm.[1]

¶5.  So Watkins fired Turner & Associates. On his own, the worker negotiated some type of resolution with Karriem and received $18,000. Later, the firm agreed to settle the case for $300,000, minus the $18,000 it already had paid Watkins. It was agreed Watkins would receive the remaining $282,000 at a later date. Karriem told Watkins the law firm would forward him a release for his signature, but the law firm never sent one.[2]

---

[1] The record is unclear as to whom exactly Watkins communicated with at the law firm. Watkins' affidavit only states that he contracted with the law firm and that the law firm made representations to him.

[2] Neither Watkins nor his attorney ever discussed the settlement with Bennie Turner, Angela Turner, or any other lawyer employed by or representing the law firm. However,

¶6.     Watkins then hired an attorney to represent him against the law firm. Watkins' new attorney began corresponding with Karriem about the release agreement. After a series of emails, Karriem eventually emailed a draft of the release. The parties then negotiated the language of the final release. Watkins signed the settlement release on July 25, 2012. A representative of the law firm did not sign the release, nor was there even a signature line for a representative of the firm.

¶7.     Afterward, the law firm told Watkins' attorney the remaining balance of $282,000 would be paid by September 9, 2012. But the firm never sent another nickel.

¶8.     Watkins subsequently sued the law firm.[3]

## PROCEDURAL HISTORY

¶9.     On April 3, 2013—eleven years after Watkins was injured—he filed suit against the law firm alleging legal malpractice and breach of contract, as well as asserting other claims.[4] As litigation dragged on, Watkins filed a motion for an expedited trial setting, because he had

_____

Watkins asserted that Karriem had authority to enter into the settlement agreement on behalf of the law firm.

[3] The client's amended complaint lists the defendants as "Turner & Associates, PLLC, Estate of Bennie L. Turner, & Angela Turner." For ease of reference, we refer collectively to the defendants as "the law firm."

[4] During the proceedings, Watkins filed his first motion for summary judgment. In response, Angela Turner submitted an affidavit in which she denied that Karriem had authority to enter into a settlement agreement on behalf of the law firm. Ms. Turner also denied that the law firm had ever agreed to represent Watkins in the underlying personal injury case. The circuit court ultimately found there were genuine issues of fact and denied Watkins' motion for summary judgment.

3

been diagnosed with stage IV colon cancer. That motion was denied. A year later, Watkins again sought an expedited trial date, this time by writing a letter to the trial judge citing to his stage IV colon cancer as the basis for an expedited trial. The trial judge told Watkins' attorney to confer with the firm about setting a trial date, but Watkins was unable to get in touch with the law firm.

¶10. The worker served requests for admissions on the law firm in June 2016, but the firm never responded to the requests.

¶11. In December 2016, Gerald Watkins died. His lawyer subsequently filed a second motion for summary judgment based in part on the law firm's failure to respond to the requests for admissions. The law firm never filed a response to the motion for summary judgment until the circuit court ordered the law firm to do so. The trial court granted summary judgment in favor of Watkins based on the law firm's admissions. A month later, the law firm appealed.

¶12. After the law firm filed the notice of appeal, Gerald Watkins' widow opened an estate. Later, the estate was substituted as the plaintiff.

### *The judgment was incomplete.*

¶13. This Court dismissed the appeal for lack of jurisdiction. *Turner & Assocs. P.L.L.C. v. Watkins*, 259 So. 3d 640, 641 (¶4) (Miss. Ct. App. 2018). We explained that "the court's order granted Watkins's motion for summary judgment, but it did not award Watkins any monetary judgment or damages." *Id.* at 642 (¶6). Since "the trial court's order granting

4

summary judgment is not a final, appealable judgment," we "dismiss[ed] for lack of jurisdiction." *Id*. at 642 (¶6).[5]

> ***Damages were granted after the appeal was dismissed.***

¶14. After this Court ruled in *Watkins*, the law firm sought to set aside the requests for admissions in the trial court. The motion was filed three years, three months, and two days after the requests for admissions were originally served.

¶15. The trial court entered a final judgment and ruled on outstanding motions. First, the trial court held that the "[p]laintiff moved for entry of a final order of judgment granting damages in the amount of $5,000,000 as alleged in the Complaint." Further, "[a]t the Zoom hearing on this Motion, Plaintiff amended its requested amount to the difference between the agreed upon settlement made between Defendants and Watkins, and the amount actually paid toward that settlement, which would make the new request for the amount of $282,000."

¶16. The trial court awarded the estate this amount. The court also granted a motion to substitute parties. The trial court then denied the law firm's request to withdraw the requests for admissions. Further, the trial court refused to revisit the grounds for the original summary judgment. The law firm once again appealed.

## STANDARD OF REVIEW

¶17. "In determining whether the trial court properly granted or denied a motion for

---

[5] The Court noted that while the appellee's brief declared Watkins had passed away, by that time a suggestion of death had not been filed. *Id*. at n.2.

summary judgment, we conduct a de novo review of the record." *Brewer ex rel. Brewer v. Miss. Farm Bureau Cas. Ins. Co.*, 328 So. 3d 721, 723 (¶7) (Miss. Ct. App. 2021) (internal quotation marks omitted). "All evidence is to be viewed in the light most favorable to the non-moving party." *Byrd v. Bowie*, 933 So. 2d 899, 902 (¶5) (Miss. 2006). "The decision of the trial court will only be reversed if there are indeed triable issues of fact." *Id*. (internal quotation marks omitted).

## DISCUSSION

¶18.    The law firm raises multiple arguments on appeal. First, it contends the Statute of Frauds prevents the settlement release agreement from being an enforceable contract. Second, the firm disagrees with the trial court's award of damages. Third, it asserts that none of the estate's requests for admissions "address the success of Watkins' underlying claim"—essentially arguing the estate failed to prove all elements of its claim for legal malpractice. Finally, the firm argues the trial court lacked jurisdiction because Watkins died, and his counsel failed to file a timely suggestion of death. We address each issue in turn.

### I.    The settlement release was not barred by the Statute of Frauds.

¶19.    The law firm argues the "Absolute Release With Indemnity and Confidentiality Covenants" settlement release is barred by Mississippi's Statute of Frauds, because it was not signed by the defendants—only Watkins signed it. *See* Miss. Code Ann. § 15-3-1 (Rev. 2019) (requiring certain contracts be in writing in order to be enforceable). Specifically, the law firm argues that the settlement agreement violates the Statute of Frauds because it

6

amounts to a "special promise to answer for the debt or default or miscarriage of another person[.]" *Id.*

¶20. The law firm's argument fails for two reasons. First, the law firm waived the issue by failing to raise it until its motion for reconsideration of the final judgment. *See Canizaro v. Mobile Commc'ns Corp. of Am.*, 655 So. 2d 25, 30 (Miss. 1995) ("[I]f a party fails to raise the Statute of Frauds as [a] defense in his answer to a complaint, he will be deemed to have waived the defense"); MRCP 8(c) (providing that the statute of frauds must be asserted as a defense in a responsive pleading).

¶21. Second, the settlement agreement was an agreement by the law firm to settle Watkins' malpractice claim *against the law firm*—not a mere "promise to answer for the debt or default or miscarriage of another person." Miss. Code Ann. § 15-3-1(a). The fact that the written release also releases the law firm's individual owners and employees does not bring it within the Statute of Frauds. *See Lee v. Newman*, 55 Miss. 365, 373 (1877) ("[W]herever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute . . . although the performance of it may incidentally have the effect of extinguishing the liability of another."). Therefore, in addition to being waived, the law firm's Statute of Frauds argument is without merit. We therefore decline to reverse the trial court's enforcement of the contract.

## II. The damages were not unreasonable.

¶22. The law firm argues the estate has not proved any damages, so the award must be

7

reversed. Notably, the law firm argues that the record lacks proof, as "[t]he record is wholly devoid of any proof of medical treatment, period of incapacity or objective proof to support a judgment of monetary damages." The firm insists that without such proof, the judgment in the amount of $282,000 "operates as a penalty."

¶23. "The damages should be the amount that would place the nonbreaching party in the position where [it] would have been but for the breach, no more and no less." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 417 (¶55) (Miss. 2018) (internal quotation marks omitted).

¶24. Here, the Absolute Release with Indemnity and Confidentiality Covenants reads in relevant part:

> Gerald Watkins . . . enters into this Absolute Release with Indemnity and Confidentiality on the terms set out in the paragraphs below in exchange for the total sum of Three Hundred Thousand Dollars ($300,000.00) from Turner & Associates, cash in hand, less $18,000, monies previously paid, the receipt and sufficiency of which consideration hereby acknowledge. The Claimant agrees that, in exchange for the recited consideration, he shall be legally bound by each of the terms stated in this document.

Under the "further actions" section of the release, it stated, "[i]t is further understood that since the purpose of this settlement is to end the matter forever, the undersigned agrees."

¶25. Watkins originally sought punitive damages in his amended complaint, demanding a total of $5,000,000 from the law firm. After this Court dismissed the appeal in *Watkins*, finding the judgment was not final for lack of damages, the estate reasserted its demand for $5,000,000. However, as the trial court set out in its order settling damages, "[a]t the Zoom

8

hearing on this Motion, Plaintiff amended its requested amount to the difference between the agreed upon settlement made between Defendants and Watkins, and the amount actually paid toward the settlement, which would make the new request for the amount of $282,000."[6]

¶26.    Here, the trial court followed the language of *Maness* to its very letter and granted Watkins "no more and no less" than the amount the parties bargained. Therefore, the amount Watkins received was exactly the amount that he was owed under the agreement.

### III.    The law firm admitted Watkins' allegations.

¶27.    The law firm argues the deemed "requests for admissions" did not establish if Watkins would have prevailed on his claim for legal malpractice.

#### A.    *The law firm failed to respond to the requests for admissions.*

¶28.    Mississippi Rule of Civil Procedure 36 governs requests for admissions. As the law firm correctly asserts, the purpose of requests for admissions "is to narrow and define issues for trial by determining which facts are not in dispute." *Hawkins v. Hale*, 185 So. 3d 1076, 1078 (¶6) (Miss. Ct. App. 2016) (internal quotation marks omitted). Rule 36 provides in relevant part:

---

[6] To some extent, the law firm attempts to argue that the $282,000 judgment is a "penalty." "To qualify for punitive damages in a breach of contract case, a plaintiff must prove by a preponderance that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." *Hamilton v. Hopkins*, 834 So. 2d 695, 703 (¶26) (Miss. 2003). Because this amount was exactly what the parties had bargained for in the release, the law firm's argument that it operates as a penalty fails. Furthermore, the release explicitly barred punitive damages.

9

> The matter is admitted unless, within thirty days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter[.]

"Although not limited to a specific number, the requests must be reasonable and must be unambiguous." *Haley v. Harbin*, 933 So. 2d 261, 262 (Miss. 2005) (order). "A request is ambiguous if the request is subject to more than one reasonable interpretation." *Id*. "Properly used, requests for admissions serve the expedient purpose of eliminating the necessity of proving essentially undisputed and peripheral issues of fact." *Id*. at 263 (internal quotation marks omitted).

¶29. Critically, "[a] matter that is deemed admitted *does not require further proof*." *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶7) (Miss. Ct. App. 2017) (internal quotation marks omitted) (emphasis added). For "[a]ny matter admitted under this rule is *conclusively established* unless the court on motion permits withdrawal or amendment of the admission." MRCP 36(b) (emphasis added).

¶30. "Any matter conclusively established is treated as a judicial admission, and thus, both the court and the parties are bound by the admissions." *Byrd v. Bowie*, 992 So. 2d 1202, 1205 (¶8) (Miss. Ct. App. 2008). In *Byrd*, this Court reasoned that "a court may base a grant of summary judgment upon an admission, if the court is satisfied that there are no outstanding genuine issues of material fact in the case." *Id*. Therefore a trial court may use the admissions as a basis for granting summary judgment. *Id*.

¶31. In one case, the Supreme Court explained that "Rule 36 is straightforward in its

10

terms." *DeBlanc v. Stancil*, 814 So. 2d 796, 798 (¶12) (Miss. 2002). The Court reasoned that "[m]atters admitted by default under Rule 36(a) are established unless and until the trial court allows amendment or withdrawal by motion under Rule 36(b)." *Id*. at 800 (¶17). In *DeBlanc*, this Court acknowledged that the application of Rule 36 "may sometimes seem harsh," but "the harshness may be ameliorated by the trial court's power to grant amendments or withdrawals of admissions in proper circumstances." *Id*. at 801-02 (¶26).

¶32. In its order granting Watkins' second motion for summary judgment, the trial court held "[t]he Requests for Admissions addressed dispositive items like admitting there was a valid contract between the Plaintiffs and Defendants, admitting the Defendants misrepresented possible awards to Plaintiff, admitting the statute of limitations expired on the Plaintiff's claim, [and] **admitting negligence**[.]" (Emphasis added).

¶33. Because the law firm never responded to the requests for admissions, in accord with *Williams*, *Byrd*, and *DeBlanc*, these factual disputes were "conclusively established."

### B. The law firm waived its legal malpractice defenses by entering into the settlement agreement.

¶34. Notwithstanding the law firm's failure to properly respond to Watkins' request for admissions, the law firm alleges Watkins never proved the underlying claim of legal malpractice, and as a result there still exists a genuine issue of material fact precluding summary judgment. Secondly, the law firm argues it never owed Watkins a duty in the first place, so there was no attorney-client relationship.

¶35. Further, the law firm argues the admissions did not conclusively solidify the elements

11

of legal malpractice. Specifically, the law firm contends that even if they were deemed admitted, the applicable request doesn't prove the "trial-within-a-trial" test.[7]

¶36.    "It is true—and well established—that a plaintiff in a negligence-based malpractice action must establish proximate cause by the so-called 'trial-within-a-trial' test." *Crist v. Loyacono*, 65 So. 3d 837, 842 (¶14) (Miss. 2011). That is to say, the client "must show that, but for [his] attorney's negligence, he would have been successful in the prosecution or defense of the underlying action." *Id*.

¶37.    Regardless of what the requests for admissions do or do not establish, this issue is essentially moot because the circuit court granted summary judgment and awarded damages based on the settlement agreement between Watkins and the law firm, not a claim for malpractice. *See Rounsaville v. Rounsaville*, 732 So. 2d 909, 911 (¶11) (Miss. 1999) (finding that by subsequently agreeing to a settlement agreement, the husband waived any objections to the divorce or to the settlement agreement). The law firm's argument that Watkins could never prove the "trial-within-a-trial" test is irrelevant, since it negotiated a release for his claims, regardless of the merits of his underlying malpractice claim. Therefore, it is unnecessary to address the law firm's trial-within-a-trial argument.

## IV.    There is no requirement to file a suggestion of death.

¶38.    The law firm asserts that a suggestion of the death of Watkins was filed, and as a

---

[7] The applicable request for admission stated "[a]dmit that, regardless of the success of the claim, had it not been for the negligence on the part of Turner & Associates, Gerald Watkins' claim would have been filed."

12

result, Watkins' counsel was required to move for substitution when counsel learned of the client's death. Essentially the firm contends that the estate filed a suggestion of death of Watkins, yet Watkins' counsel failed to move to substitute a party in his place and proceeded with litigation "without a timely substitution." In the firm's view, this deprived the trial court of jurisdiction.

¶39. "When a party to a lawsuit dies, and the claim survives, Mississippi Rule of Civil Procedure 25(a)(1) confers the right to substitute 'the proper parties.'" *Keller v. Bennett*, 103 So. 3d 747, 749 (¶1) (Miss. Ct. App. 2012). "There must be a motion for substitution made by another party or the deceased party's successor or representative." *Id*. "This motion must be served on parties following Rule 5 and interested nonparties following Rule 4." *Id*.; *see* MRCP 4, 5. "And when 'death is suggested upon the record by service of a statement of the fact of the death,' this motion must be timely." *Keller*, 103 So. 3d at 749 (¶1) (quoting MRCP 25(a)(1)). "What starts the ninety[-]day . . . period is not just any reference in the record to a party's death, but a statement of the fact of the death that is served on parties in the suit under Rule 5 and on non-parties under Rule 4." *Id.* at 750 (¶10) (internal quotation marks omitted).

¶40. "Under Mississippi's Rule 25, the 90 days begins running 'after the death is suggested upon the record by service of a statement of the fact of the death,' without any restriction on who may serve the statement of the fact of death." *Id*. at 752 (¶20) (quoting MRCP 25(a)(1)). "The only requirements under Rule 25(a)(1) are that '[t]he suggestion of death

13

must be in writing and must be served on parties in accordance with Rule 5 and upon persons not parties as provided in Rule 4 for the service of a summons.'" *Id*. at 753 (¶22) (quoting MRCP 25 cmt.). "Nowhere in the rule or its official comment is there a requirement that the suggestion of death indicate the deceased party's successor or representative." *Id*.

¶41.     In this case, the trial court noted the argument that "[s]ince the record reflects that Watkins had died, and ninety (90) days had passed, substitution is prohibited and the cause should be dismissed." Nonetheless, the trial court was not persuaded by the law firm's argument. The court instead found that "service of a suggestion of death was never effected pursuant to Rule 5 of the Miss. Rules of Civil Procedure, as required by Rule 25(a)(1)." In essence, the trial court found that because the estate never formally suggested the death of Watkins, then the 90-day period was not triggered simply by a reference in a brief to Watkins' death. Rather, as stated above, Rule 25(a)(1) tells us that "a statement of the fact of the death" served on the parties in the suit under Rule 5 and the non-parties under Rule 4 triggers the 90-day period.

¶42.     This case resembles *Harris v. Darby*, 17 So. 3d 1076 (Miss. 2009). There, a plaintiff died in a medical malpractice suit. *Id*. at 1077 (¶3). Afterwards, the plaintiff's executrix filed a motion to substitute parties under Rule 25. *Id*. The defendants asserted there had been no amended complaint filed substituting a proper party. *Id*. The defendants filed a motion to dismiss, and the trial court subsequently treated the defendants' motion as a motion for summary judgment; finding the plaintiff's motion to substitute was barred, the court

14

dismissed the action. *Id*. at 1077-78 (¶¶3-4).

¶43.    The Mississippi Supreme Court reversed and remanded, holding the executrix was properly substituted as a party-plaintiff because the defendants made no suggestion of death upon the record, so the 90-day time requirement under Rule 25 was not triggered. *Id*. at 1081 (¶¶16-17).    Specifically, the Court noted that "Harris complied with Rule 25, as the defendants made no suggestion of death upon the record to trigger the 90-day time requirement set out by the rule." *Id*. at 1080 (¶14).    And "[t]he defendants objected only when Harris moved to be substituted for the deceased Plaintiff Green." *Id*.

¶44.    Like the plaintiffs in *Harris*, neither the estate nor the law firm in this case ever filed a "statement of the fact of the death." Merely mentioning that Watkins had died in a footnote of an appellate brief does not equate to following the requirements set forth in Rule 25(a)(1) for filing a suggestion of death.[8]

¶45.    Accordingly, this Court holds that the estate complied with Rule 25, as no suggestion of death was ever made upon the record to trigger the 90-day time requirement set out by the rule.  In any event, the substitution did not impact the trial court's ruling, as it was based upon the law firm's admissions and the bargained-for settlement amount.

## CONCLUSION

---

[8] As the estate correctly notes in its briefing, there is no requirement to file a suggestion of death.  If and when counsel files a suggestion of death, a motion to substitute a party must be done within 90 days. *See* MRCP 25(a)(1).  However, the suggestion of death filing is simply a triggering mechanism that imposes a 90-day window in which to file a motion to substitute.

¶46. As illustrated above, "[t]he law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." *Est. of Davis*, 42 So. 3d at 527 (¶28). The release was an enforceable contract, and the trial court granted Watkins "no more and no less" than the amount that was bargained for between the parties. Further, the requests for admissions were deemed admitted, and Turner & Associates admitted to committing legal malpractice. Finally, Watkins was not required to file a suggestion of death. As a result, we affirm the trial court's final judgment.

¶47. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**